1  LOCKRIDGE GRINDAL NAUEN P.L.L.P.
   REBECCA A. PETERSON (241858)
2  ROBERT K. SHELQUIST
   100 Washington Avenue South, Suite 2200
3  Minneapolis, MN 55401
   Telephone:     (612) 339-6900
4  Facsimile:     (612) 339-0981
   E-mail: rkshelquist@locklaw.com
5          rapeterson@locklaw.com

6  *Attorneys for Plaintiff and the Putative Class*

7  [Additional Counsel on Signature Page]

8

9              UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF CALIFORNIA
10             SAN FRANCISCO DIVISION

11 IN RE BIG HEART PET BRANDS          )  Lead Case No. 4:18-cv-00861-JSW
   LITIGATION                          )
12                                     )  (Consolidated with No. 4:18-cv-01465;
   _____ )  4:18-cv-01466; 4:18-cv-01099; 4:18-
13                                     )  cv-01663; and 4:18-cv-02662)
   This Document Relates to:           )
14 ALL ACTIONS                         )  Hon. Jeffrey S. White
                                       )
15                                     )
                                       )  PLAINTIFFS' MEMORANDUM IN
16                                     )  OPPOSITION TO DEFENDANT'S
                                       )  MOTION TO DISMISS CLASS
17 _____ )  ACTION COMPLAINT

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ....................................................................... 1

II.  SUMMARY OF THE AMENDED COMPLAINT'S FACTUAL ALLEGATIONS ....... 2

III.  LEGAL STANDARDS .............................................................................. 4

IV.  ARGUMENT ......................................................................................... 4

    A.  Defendant's Refund Offer Does Not Moot Plaintiffs' Claims .............................. 4

    B.  Plaintiffs Have Satisfied Rule 8 and Rule 9(b) ...................................... 7

    C.  Plaintiffs' State Common Law Claims Are Sufficiently Pled .............................. 8

    D.  Plaintiffs Sufficiently Alleged Knowledge or Intent to Deceive by Defendant .... 9

    E.  Plaintiffs' Statutory Consumer Protection Claims Are Well Pled ...................... 12

        1.  Plaintiffs Allege Actionable Affirmative Misrepresentations
           and Omissions ............................................................................. 12

        2.  Plaintiffs Adequately Allege Reliance ........................................... 14

        3.  Defendant Knew or Should Have Known that Its Dog Foods Were
           Contaminated ............................................................................. 14

        4.  Plaintiffs Satisfied Statutory Notice Requirements ......................... 16

        5.  Plaintiffs Have Standing to Seek Injunctive Relief ......................... 17

        6.  Plaintiff Sebastiano's Florida Deceptive and Unfair Trade Practices Act
           Claim Is Well Pleaded ................................................................... 17

        7.  Plaintiff Jilek Has Standing Under the Minnesota Commercial Feed Law ... 18

    F.  Plaintiffs' Negligence and Negligent Misrepresentation Claims
        Should Not be Dismissed .................................................................. 18

        1.  Defendant Mischaracterizes Plaintiffs' Negligence Claims ........................... 18

        2.  The Economic Loss Doctrine Does Not Bar Plaintiffs' Negligence or
           Negligent Misrepresentation Claims .............................................. 19

        3.  Plaintiffs' Negligent Misrepresentation Claims Are Properly Pled .............. 21

    G.  Plaintiffs Pled Breach of an Express and Implied Warranty ............................. 22

-i-

1        1.    Defendant Created Express Warranties for All Its Products ........................ 22

2        2.    Defendant's Warranties Were a Basis of the Bargain for Its Products .......... 25

3        3.    Plaintiffs Are Not Required to Provide Notice and Opportunity to Cure ...... 25

4        4.    Plaintiffs Stated a Breach of Implied Warranty Claim ................................ 27

5        5.    Defendant's "Standing Offer" of a Refund Does Not Moot
              Plaintiffs' Claims and Does Not Adequately Compensate Plaintiffs for its
6             Breach of Warranties ...................................................................... 32

7    H.    Plaintiffs May Maintain Claims on Behalf of a Nationwide Class ..................... 33

8    I.    Plaintiffs Have Standing to Seek Injunctive Relief ............................................ 37

9    J.    Plaintiffs Properly Allege Punitive Damages ..................................................... 38

10

11  V.    CONCLUSION ............................................................................................... 40

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Allen v. Bank of Am., N.A.*,
   933 F. Supp. 2d 716 (D. Md. 2013) .................................................................. 15

*Am. Suzuki Motor Corp. v. Superior Court*,
   37 Cal. App. 4th 1291 (1995) ................................................................... 27, 29

*Arabian v. Organic Candy Factory*,
   No. 2:17-CV-05410-ODW-PLA, 2018 WL 1406608
   (C.D. Cal. Mar. 19, 2018) ............................................................................... 19

*Arthur v. Louis Vuitton N. Am. Inc.*,
   No. CV 08-4731 AHM, 2010 WL 11463276 (C.D. Cal. May 6, 2010) ........................... 5

*Asghari v. Volkswagen Grp. of Am., Inc.*,
   42 F. Supp. 3d 1306 (C.D. Cal. 2013) ............................................................. 35

*Astiana v. Ben & Jerry's Homemade, Inc.*,
   No. C 10–4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011).............................. 37

*Baggett v. Hewlett-Packard Co.*,
   582 F. Supp. 2d 1261 (C.D. Cal. 2007) ............................................................ 11

*Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*,
   155 A.3d 445 (Md. Ct. App. 2017).................................................................... 20

*Barakezyan v. BMW of N. Am., LLC*,
   No. CV 16-00173, 2016 WL 2840803 (C.D. Cal. Apr. 7, 2016) ................................... 30

*Barb v. Wallace*,
   412 A.2d 1314 (Md. Ct. App. 1980)................................................................... 23

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007) ......................................................................... 37

*Blue Buffalo Co. v. Nestle Purina Petcare Co.*,
   No. 15-cv-384, 2015 WL 3645262 (E.D. Mo. June 10, 2015) ..................................... 13

*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001) ......................................................................... 4

*Bobb Forest Prods., Inc. v. Morbark Indus., Inc.*,
   783 N.E.2d 560 (Ohio 2002)..................................................................... 25, 30

*Body Invest, LLC v. Cone Solvents, Inc.*,
  No. M2006-01723-COA-R3CV, 2007 WL 2198230 (Tenn. Ct. App. July
  26, 2007) ........................................................................................................ 22

*Borish v. Russell*,
  230 P.3d 646 (Wash. 2010), *as amended on denial of reconsideration*
  (June 29, 2010)................................................................................................ 20

*Boswell v. Costco Wholesale Corp.*,
  No. SACV 16-0278, 2016 WL 3360701 (C.D. Cal. June 6, 2016) ................. 24

*Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc.*,
  No. 1:16-CV-00371-DAD-SMS, 2016 WL 3519294
  (E.D. Cal. June 27, 2016)................................................................................ 19

*Bruno v. Eckhart Corp.*,
  280 F.R.D. 540 (C.D. Cal. 2012) .................................................................... 36

*Bruno v. Quten Research Inst. LLC*,
  280 F.R.D. 524 (C.D. Cal. 2011) .................................................................... 34

*Bruton v. Gerber Prods. Co.*,
  No. 12-cv-02412, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014)...................... 24

*Burbank v. Compass Bank*,
  No. 1:15-CV-60, 2016 WL 3618691 (E.D. Tex. Mar. 29, 2016) ................... 20

*Burr v. Sherwin Williams Co.*,
  268 P.2d 1041 (Cal. 1954) .............................................................................. 30

*Camasta v. Omaha Steaks Int'l, Inc.*,
  No. 12-CV-08285, 2013 WL 4495661 (N.D. Ill. Aug. 21, 2013) .................... 5

*Cartwright v. Viking Indus., Inc.*,
  249 F.R.D. 351 (E.D. Cal. 2008) .................................................................... 30

*Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*,
  270 F. Supp. 3d 1340 (S.D. Fla. 2017) .......................................................... 17

*Castaneda v. Fila USA, Inc.*,
  No. 11-cv-1033-H, 2011 WL 7719013 (S.D. Cal. Aug. 10, 2011) ................. 25

*Catalano v. BMW of N. Am., LLC*,
  167 F. Supp. 3d 540 (S.D.N.Y. 2016).............................................................. 7

*Cervantes v. Countrywide Home Loans, Inc.*,
  656 F.3d 1034 (9th Cir. 2011) ........................................................................ 11

-iv-

*Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*,
    537 N.E.2d 624 (Ohio 1989).......................................................................... 26, 31

*Chowning v. Kohl's Dep't Stores, Inc.*,
    No. CV 15-08673 RGK (SPX), 2016 WL 1072129
    (C.D. Cal. Mar. 15, 2016) .......................................................................................... 6

*Clancy v. The Bromley Tea Co.*,
    308 F.R.D. 564 (N.D. Cal. 2013) ............................................................................ 36

*Clark v. Allstate Ins. Co.*,
    106 F. Supp. 2d 1016 (S.D. Cal. 2000)................................................................... 38

*Club Escapade 2000, Inc. v. Ticketmaster, L.L.C.*,
    No. EP-11-CV-166-KC, 2011 WL 5976918 (W.D. Tex. Nov. 29, 2011) ...................... 20

*Collins v. eMachines, Inc.*,
    202 Cal. App. 4th 249 (2011), *as modified* (Dec. 28, 2011).................................... 15, 16

*Connick v. Suzuki Motor Co.*,
    675 N.E.2d 584 (Ill. 1996) ...................................................................................... 14

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir. 1990) ................................................................................... 24

*Cousins v. Lockyer*,
    568 F.3d 1063 (9th Cir. 2009) ................................................................................... 4

*Dairy Rd. Partners v. Maui Gas Ventures LLC*,
    No. CV 16-00611................................................................................................... 10

*De La Torre v. Legal Recovery Law Office*,
    No. 12 cv 2579-LAB (WMC), 2013 WL 5462294
    (S.D. Cal. Sept. 30, 2013) .................................................................................. 29, 35

*Doll v. Ford Motor Co.*,
    814 F. Supp. 2d 526 (D. Md. 2011) ......................................................................... 15

*Donohue v. Apple, Inc.*,
    871 F. Supp. 2d 913 (N.D. Cal. 2012) .................................................................. 9, 33

*Eastwood v. Horse Harbor Found., Inc.*,
    241 P.3d 1256 (Wash. 2010)................................................................................... 20

*Esborg v. Bailey Drug Co.*,
    378 P.2d 298 (Wash. 1963)..................................................................................... 30

*Facebook, Inc. v. Grunin*,
    77 F. Supp. 3d 965 (N.D. Cal. 2015) ....................................................................... 12

*Fed. Ins. Co. v. Lazzara Yachts of N. Am., Inc.*,
     No. 8:09-cv-607-T-27MAP, 2010 WL 1223126
     (M.D. Fla. Mar. 25, 2010) ....................................................................................... 26

*Firestone Tire & Rubber Co. v. Cannon*,
     452 A.2d 192 (Md. Ct. App. 1982), *aff'd*, 456 A.2d 930 (Md. 1983) ........................... 26

*Fla. Coca-Cola Bottling Co. v. Jordan*,
     62 So. 2d 910 (Fla. 1953) ........................................................................................... 30

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
     528 U.S. 167 (2000) ................................................................................................... 37

*Gator.com Corp. v. L.L. Bean, Inc.*,
     398 F.3d 1125 (9th Cir. 2005) .................................................................................... 37

*GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc.*,
     650 F.3d 1257 (9th Cir. 2011) ...................................................................................... 5

*Gen. Supply & Equip. Co., Inc. v. Phillips*,
     490 S.W.2d 913 (Tex. Civ. App. 1972) ....................................................................... 23

*Graham v. Wal-Mart Stores, Inc.*,
     No. 2:14-cv-02916-MCE-CMK, 2017 WL 3783101
     (E.D. Cal. Aug. 31, 2017) .......................................................................................... 39

*Green v. Canidae Corp.*,
     No. CV 09-00486 GAF, 2010 WL 11507372 (C.D. Cal. Jan. 29, 2010) ....................... 29

*Greenman v. Yuba Power Prods., Inc.*,
     377 P.2d 897 (Cal. 1963) ........................................................................................... 26

*Griesi v. Atl. Gen. Hosp. Corp.*,
     756 A.2d 548 (Md. Ct. App. 2000) .............................................................................. 22

*Haddix v. Gen. Mills, Inc.*,
     No. 2:15-CV-02625-MCE-AC, 2016 WL 2901589
     (E.D. Cal. May 17, 2016) ............................................................................................. 5

*Hadley v. Chrysler Grp. LLC*,
     No. 13-13665, 2014 WL 988962 (E.D. Mich. Mar. 13, 2014),
     *aff'd*, 624 F. App'x 374 (6th Cir. 2015) ........................................................................ 7

*Hadley v. Kellogg Sales Co.*,
     273 F. Supp. 3d 1052 (N.D. Cal. 2017) ...................................................................... 24

*Holt v. Globalinx Pet, LLC*,
     No. SACV-12-0041, 2013 WL 3947169 (C.D. Cal. July 30, 2013) .............................. 24

MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS

LEAD CASE NO. 4:18-CV-00861-JSW

*Huntair, Inc. v. Gladstone*,
    774 F. Supp. 2d 1035 (N.D. Cal. 2011) ............................................................ 8

*Hurtado v. Superior Court*,
    522 P.2d 666 (Cal. 1974) ................................................................................ 34

*In re A.M.C.*,
    182 Wash. App. 1048, 2014 WL 3859891 (Wash. App. Aug. 5, 2014) ............ 11

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ...................................................... 27, 34

*In re Clorox Consumer Litig.*,
    894 F. Supp. 2d 1224 (N.D. Cal. 2012) ........................................................... 36

*In re Experian Data Breach Litig.*,
    No. SACV 15-1592 AG, 2016 WL 7973595 (C.D. Cal. Dec. 29, 2016) ............ 18

*In re Ferrero Litig.*,
    794 F. Supp. 2d 1107 (S.D. Cal. 2011) ............................................................ 24

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) ........................................................................... 38

*In re Google Android Consumer Privacy Litig.*,
    No. 11-MD- 02264 JSW, 2014 WL 988889 (N.D. Cal. Mar. 10, 2014) ............ 36

*In re Milo's Dog Treats Consol. Cases*,
    9 F. Supp. 3d 523 (W.D. Pa. 2014) .................................................................. 30

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014) ............................................................... 27

*In re Roger*,
    No. AP 6:16-AP-1199-MH, 2018 WL 1779336 (C.D. Cal. Apr. 12, 2018) ...... 10

*In re Seagate Tech. LLC Litig.*,
    233 F. Supp. 3d 776 (N.D. Cal. 2017) ............................................................. 14

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices &*
    *Prods. Liability Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ........................................................... 31

*Johnson v. Triple Leaf Tea Inc.*,
    No. C-14-1570 MMC, 2014 WL 4744558 (N.D. Cal. Sept. 23, 2014) ............. 34

*Jordan v. Sosa*,
    654 F.3d 1012 (10th Cir. 2011) ......................................................................... 5

-vii-

*Kasky v. Nike, Inc.*,
    45 P.3d 243 (Cal. 2002), *as modified* (May 22, 2002)......................................... 13

*Kearney v. Hyundai Motor Co.*,
    No. SACV 09-1298 DOC, 2010 WL 9093204 (C.D. Cal. June 4, 2010)....................... 39

*Keegan v. Am. Honda Motor Co., Inc.*,
    284 F.R.D. 504 (C.D. Cal. 2012) .................................................................................... 39

*Keilholtz v. Lennox Hearth Prods.*,
    268 F.R.D. 330 (N.D. Cal. 2010) ................................................................................... 34

*Keith v. Buchanan*,
    173 Cal. App. 3d 13 (Cal. Ct. App. 1985) .................................................................... 23

*King Tuna, Inc. v. Anova Food, Inc.*,
    No. CV-077451-ODW, 2009 WL 10673202 (C.D. Cal. Jan. 28, 2009) ....................... 35

*Kwikset Corp. v. Superior Court*,
    246 P.3d 877 (Cal. 2011) ............................................................................................... 14

*Laughlin v. Target Corp.*,
    No. 12-cv-489, 2012 WL 3065551 (D. Minn. July 27, 2012) ....................................... 14

*Lees v. Turek*,
    No. 87 C.A. 6, 1987 WL 15351 (Ohio Ct. App. Aug. 6, 1987)...................................... 23

*Lincoln Elec. Co. v. Technitrol, Inc.*,
    718 F. Supp. 2d 876 (N.D. Ohio 2010)........................................................................ 26

*Lloyd v. General Motors Corp.*,
    575 F. Supp. 2d 714 (D. Md.) ....................................................................................... 31

*Long v. Graco Children's Prods. Inc.*,
    No. 13-cv-01257, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) ................................. 15

*Main v. Gateway Genomics, LLC*,
    No. 15CV2945 AJB (WVG), 2016 WL 7626581 (S.D. Cal. Aug. 1, 2016) ............... 5, 7

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ........................................................................... 34, 35, 36

*McDougal v. Cty. of Imperial*,
    942 F.2d 668 (9th Cir. 1991) ........................................................................................... 4

*Mednick v. Precor, Inc.*,
    No. 14 C 3624, 2014 WL 6474915 (N.D. Ill. Nov. 13, 2014).......................................... 5

-viii-

*Merriman v. Am. Guarantee & Liab. Ins. Co.*,
   396 P.3d 351, *review denied*, 413 P.3d 565 (Wash. 2017) ............................................. 22

*Mexicali Rose v. Superior Court*,
   822 P.2d 1292 (Cal. 1992) ..................................................................................... 28

*Mitchell Tracey v. First Am. Title Ins. Co.*,
   935 F. Supp. 2d 826 (D. Md. 2013) ....................................................................... 6

*Mollicone v. Universal Handicraft, Inc.*,
   No. 2:16-CV-07322-CAS, 2017 WL 440257 (C.D. Cal. Jan. 30, 2017) ........................ 34

*Nemphos ex rel. C.G.N. v. Nestle USA, Inc.*,
   No. GLR-12-2718, 2013 WL 4501308 (D. Md. Aug. 21, 2013),
   *aff'd sub nom. Nemphos v. Nestle Waters N. Am. Inc.*, 775 F.3d 616
   (4th Cir. 2015) .................................................................................................... 31

*Norcia v. Samsung Telecomms. Am., LLC*,
   845 F.3d 1279 (9th Cir. 2017) ............................................................................... 23

*Otis Spunkmeyer, Inc. v. Blakely*,
   30 S.W.3d 678 (Tex. Ct. App. 2000) ..................................................................... 27

*Pagtakhan v. Doe*,
   No. C 08-2188 SI, 2013 WL 3052856 (N.D. Cal., June 17, 2013) .............................. 35

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008) ........................................................................... 34

*Petrosino v. Stearn's Prods., Inc.*,
   No. 16-CV-7735 (NSR), 2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) ........................ 39

*Philips v. Ford Motor Co.*,
   No. 14-CV-02989-LHK, 2016 WL 693283 (N.D. Cal. Feb. 22, 2016) ........................... 5

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .............................................................................................. 34

*Pisano v. Am. Leasing*,
   146 Cal. App. 3d 194 (1983) ................................................................................. 29

*Podpeskar v. Makita U.S.A. Inc.*,
   247 F. Supp. 3d 1001 (D. Minn. 2017) ............................................................. 15, 25

*Polo v. Innoventions Int'l, LLC*,
   833 F.3d 1193 (9th Cir. 2016) ............................................................................... 14

*Quiroz v. Seventh Ave. Ctr.*,
   140 Cal. App. 4th 1256 (Cal. Ct. App. 2006) ......................................................... 18

-ix-

*Rees v. PNC Bank, N.A.*,
    308 F.R.D. 266 (N.D. Cal. 2015) .................................................................... 38

*Reese v. Odwalla*,
    No. 13-cv-00947-YGR, 2017 WL 565095 (N.D. Cal. Feb. 13, 2017) ............................ 37

*Reynolds Metals Co. v. Alcan Inc.*,
    No. C04-0175RJB, 2006 WL 1169790 (W.D. Wash. May 1, 2006) .............................. 20

*Roberts v. Electrolux Home Prods., Inc.*,
    No. CV 12-1644, 2013 WL 7753579 (C.D. Cal. Mar. 4, 2013) .................................... 30

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
    102 P.3d 268 (Cal. 2004) ............................................................................. 19

*Romero v. Flowers Bakeries, LLC*,
    No. 5:14-cv-05189-BLF, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016) ............................ 9

*Sharyland Water Supply Corp. v. City of Alton*,
    354 S.W.3d 407 (Tex. 2011) ........................................................................ 20

*Silverstein v. Procter & Gamble Mfg. Co.*,
    No. CV 108-003, 2008 WL 4889677 (S.D. Ga. Nov. 12, 2008) ................................... 17

*Steinle v. City & Cty. of San Francisco*,
    230 F. Supp. 3d 994 (N.D. Cal. 2017) .............................................................. 18

*Sun-Lite Glazing Contractors, Inc. v. J.E. Berkowitz, L.P.*,
    37 F. App'x 677 (4th Cir. 2002) ..................................................................... 21

*Sustainable Ranching Partners, Inc. v. Bering Pac. Ranches Ltd.*,
    No. 17-CV-02323-JST, 2018 WL 1696805 (N.D. Cal. Apr. 6, 2018) ............................ 19

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ............................................................. 27

*Tilahun v. Sunshine Makers Inc.*,
    No. SACV 10-427 AG, 2010 WL 11468629 (C.D. Cal. Sept. 27, 2010) ......................... 34

*Tosh-Surrhyne v. Abbott Labs., Inc.*,
    No. 10-2603, 2011 WL 4500880 (E.D. Cal. Sept. 27, 2011) ..................................... 7

*Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc.*,
    831 P.2d 724 (Wash. 1992) .......................................................................... 30

*U.S. Tire-Tech, Inc. v. Boeran, B.V.*,
    110 S.W.3d 194 (Tex. Ct. App. 2003) .............................................................. 31

-x-

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
  117 F. Supp. 3d 1092 (C.D. Cal. 2015) ................................................... 21

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .................................................................... 8

*Vintage Homes, Inc. v. Coldiron*,
  585 S.W.2d 886 (Tex. Civ. App. 1979) .............................................. 26, 31

*Ward Baking Co. v. Trizzino*,
  161 N.E. 557 (Ohio Ct. App. 1928) .......................................................... 30

*Washington Mut. Bank v. Superior Court*,
  15 P.3d 1071 (Cal. 2001) .......................................................................... 33

*Weidenhamer v. Expedia, Inc.*,
  No. C14-1239RAJ, 2015 WL 1292978 (W.D. Wash. Mar. 23, 2015) ............................ 6

*White v. R.J. Reynolds Tobacco Co.*,
  No. CIV.A.H-99-1408, 2000 WL 33993333 (S.D. Tex. Sept. 27, 2000) ....................... 24

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ............................................................... 4, 13

*Willis v. Marshall*,
  401 S.W.3d 689 (Tex. App. 2013) .............................................................. 22

*Winzler v. Toyota Motor Sales, U.S.A., Inc.*,
  681 F.3d 1208 (10th Cir. 2012) .................................................................. 7

*Wolfe v. Strankman*,
  392 F.3d 358 (9th Cir. 2004) ...................................................................... 4

**STATUTES, RULES & OTHER AUTHORITIES**

4 Anderson U.C.C. §2-607:117 ...................................................................... 26

4A Part II Anderson U.C.C. §2-714:11 .......................................................... 33

Ala. Code
  §7-2-313 ................................................................................................ 22
  §7-2-607 ................................................................................................ 25

Cal. Bus. & Prof. Code
  §1780(a)(4) ............................................................................................. 6
  §1780(e) .................................................................................................. 6

Cal. Com. Code §2313 ............................................................................... 22

Cal. Health & Safety Code
        §113075.............................................................................................................. 29
        §113090.............................................................................................................. 29

California Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq*.......................*passim*

California False Advertising Law, Cal. Bus. & Prof. Code §17500, *et seq*. ........................ 13, 14

California Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq*. ...................*passim*

Federal Rules of Civil Procedure
        Rule 8 and 9(b)............................................................................................ 1, 2, 4, 7
        Rule 8(a)............................................................................................................. 38
        Rule 9(b)....................................................................................................*passim*
        Rule 12(b) ......................................................................................................... 12
        Rule 12(b)(1).................................................................................................... 4
        Rule 12(b)(6).................................................................................................... 4

Fla. Stat. Ann.
        §672.313............................................................................................................ 22
        §672.607............................................................................................................ 25

Florida Deceptive and Unfair Trade Practices Act ................................................................ 17

Ga. Code Ann.
        §10-1-372 .......................................................................................................... 14
        §10-1-421 .......................................................................................................... 14

Illinois Consumer Fraud Act, 815 ILCS 505, *et seq*.............................................................. 7

Maryland Consumer Protection Act ........................................................................................ 15

Md. Code Ann., Com. Law §2-313 ........................................................................................ 23

Minn. Stat. Ann. §8.31.......................................................................................................... 18

Minnesota Commercial Feed Law ......................................................................................... 18

N.Y. Gen. Bus. Law
        §349(h).............................................................................................................. 39
        §350-e(3) ........................................................................................................... 39

Ohio Rev. Code Ann.
        §923.48(A)......................................................................................................... 29
        §1302.26............................................................................................................ 22
        §1302.65............................................................................................................ 25

Restatement (Second) of Torts §552...................................................................................... 21

MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS                                         LEAD CASE NO. 4:18-CV-00861-JSW

Tenn. Code Ann. §47-2-313 ............................................................................................ 22

Tennessee Consumer Protection Act, Tenn. Code Ann.
    §§47-18-101, *et seq.* .................................................................................................. 7

Tex. Bus. & Com. Code Ann.
    §2.313.......................................................................................................................... 23
    §2.607.......................................................................................................................... 25

Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann.
    §§17.41, *et seq.* ......................................................................................................... 7

W. Va. Code Ann. §46A-6-106(c) .................................................................................... 16

W. Va. Code
    § 46–2–315, cmt. 2...................................................................................................... 27
    §46-2-313..................................................................................................................... 22

Wash. Rev. Code Ann. §62A.2-313 ................................................................................. 23

Washington Unfair Business Practices Act, Wash. Rev. Code Ann.
    §§19.86.010, *et seq.* .................................................................................................. 7

West Virginia Consumer Credit and Protection Act, W. Va. Code Ann.
    §46A-2-101, *et seq.* ................................................................................................... 7

MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS

LEAD CASE NO. 4:18-CV-00861-JSW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATEMENT OF ISSUES TO BE DECIDED

Whether defendant Big Heart Pet Brands, Inc.'s ("Defendant" or "Big Heart") motion to dismiss ("Motion" or "MTD") should be denied because: (1) Plaintiffs[1] satisfy Article III standing and the refund does not moot this action; (2) Plaintiffs' Amended Consolidated Complaint meets the pleading requirements of Rules 8 and 9(b) of the Federal Rules of Civil Procedure;[2] (3) Plaintiffs' common law claims are properly pled; (4) Defendant's knowledge and intent to deceive are adequately pled; (5) the statutory claims are sufficiently pled as to the relevant requirements under governing state law; (6) dismissal of the negligence and negligent misrepresentation claims is improper as the they are not barred by the Economic Loss Doctrine and the Amended Consolidated Complaint meets all other requirements; (7) Plaintiffs' express and implied warranty claims are proper; (8) Plaintiffs correctly alleged nationwide class allegations against Defendant; (9) Plaintiffs may seek injunctive relief; and (10) punitive damages are properly pled as to the relevant claims.

## I.      PRELIMINARY STATEMENT

This case is about Big Heart improperly selling adulterated dog food (collectively "Contaminated Dog Foods")[3] that contained pentobarbital, a Class II controlled substance that should not be present in pet food at any level.  Nowhere in Defendant's Motion does Defendant deny that it improperly sold adulterated dog food, nor does Defendant deny that selling adulterated dog food is prohibited.  Instead, Defendant admits that it sold products marketed as dog food that were wholly inappropriate for consumption by dogs due to their contamination with

---

[1] The plaintiffs in this action are Maclain Mullins ("Mullins"), Thomas Roupe ("Roupe"), Neil Sebastiano ("Sebastiano"), Nancy Sturm, Kathy Williamson, Mark Johnson, Norman Todd, Betty Christian, Aubrey Thomas ("Thomas"), Joyce Brown, Roberta Mayo, Jack Collins, Vivian Jilek ("Jilek"), and Rosemarie Schirripa (collectively "Plaintiffs").

[2] Unless otherwise noted, all references to "Rule __" are to the Federal Rules of Civil Procedure.

[3] Defined in the Amended Consolidated Complaint ("Amended Complaint" or "AC") at ¶2. Dkt. No. 68.  Unless otherwise noted, all paragraph references ("¶__" or "¶¶__") are to the Amended Complaint.

1   pentobarbital.  Defendant attempts to minimize this gross wrongdoing by focusing on the action it

2   took *after a third-party reported that certain of the Contaminated Dog Foods contained*

3   *pentobarbital and this action had been filed in this Court*.  But, as established below, these late

4   actions taken by Defendant do not eliminate its liability for selling the Contaminated Dog Foods

5   and misleading consumers as to the nature and quality of the Contaminated Dog Foods.  Indeed,

6   the recalled Contaminated Dog Foods were still available to purchase this summer, and Defendant

7   has failed to provide any information demonstrating that the recall of *90 million can*s of the

8   Contaminated Dog Foods ensured that consumers, including Plaintiffs, were not harmed by its

9   wrongdoing or resolved future injury to Plaintiffs and the proposed classes.

10  **II.    SUMMARY OF THE AMENDED COMPLAINT'S FACTUAL ALLEGATIONS**

11          On February 8, 2018, a report by an ABC news affiliate in Washington, D.C. disclosed

12  that certain lines of the Contaminated Dog Foods tested positive for pentobarbital.   ¶11.

13  Thereafter, plaintiff Mullins initiated this lawsuit based on the numerous claims made by

14  Defendant on its pet food labels and through advertising related to the safety and nutritional value

15  of its pet foods.  At the time of the news report, Defendant refused to respond to the reporter's

16  questions and did not voluntarily or formally recall any of the Contaminated Dog Foods.  ¶¶11-

17  12.  Instead, Defendant claimed it was conducting its own investigation into the veracity of the

18  reported testing of the Contaminated Dog Foods.  *Id.*  This investigation resulted in Defendant

19  issuing numerous and conflicting updates as to the investigation, a significant expansion of a

20  voluntary withdrawal to include all the Contaminated Dog Foods, and a formal recall mandated

21  by the FDA and announced on March 2, 2018.  ¶¶13-29.  In connection to the March 2, 2018

22  recall, the FDA told Defendant that its "cooperation in this matter is important *to the protection of*

23  *the general public.*"  ¶35.  In the end, Defendant was forced to recall 90 million cans of pet food

24  spanning multiple brands, and testing by the FDA confirmed the presence of pentobarbital in the

25  tallow supply included in the Contaminated Dog Foods, with significant levels of over 800 parts

26  per billion ("ppb").  ¶¶32-33.  Defendant claims that the source of the contaminated tallow is one

27  supplier—JBS USA Holdings, Inc. (a subsidiary of JBS S.A.) and its rendering facility MOPAC

28

2

located in eastern Pennsylvania (collectively, "JBS")—who knowingly works with recycled meat by-product, including animal byproducts not suitable for human consumption, and accepts euthanized horses.  ¶¶36-37.

Defendant made numerous claims on its Contaminated Dog Foods' labels and through advertising related to the safety and nutritional value of its pet foods, including the phrases: "100 percent complete and balanced nutrition"; "providing safe, healthy, and high-quality food" with "the purest ingredients"; and "nourishing meal."  AC ¶¶51-53; 113.  It further promised to its consumers that all its products met U.S. Department of Agriculture ("USDA"), American Association of Feed Control Officials ("AAFCO"), and Food and Drug Administration ("FDA") standards.  ¶¶56-57.  Moreover, Defendant failed to disclose that the Contaminated Dog Foods were in fact adulterated dog foods that were improperly sold or advertised as safe and proper for consumption by pets.  ¶¶3, 5, 8, 21, 48-55, 57, 114-116.  As a result of Defendant's omissions and misrepresentations, a reasonable consumer would have no reason to suspect the presence of pentobarbital without conducting his or her own scientific tests, or reviewing third-party scientific testing of these products.  These omissions and representations caused consumers, including Plaintiffs, to purchase pet foods that they would not have bought if the true quality and nature were disclosed prior to sale.

Defendant touted its quality assurances and supplier standards to further support its claims of healthy, safe, pure, and quality dog food.  Specifically, Defendant maintains that it keeps rigorous quality and supplier standards from "start to finish" and performs three-tier auditing that includes third party auditors, to ensure pure ingredients and fair labor are used in its products, including the Contaminated Dog Foods.  ¶¶40, 42-45.  Moreover, Defendant has stated that pentobarbital is "not something that is added to pet food….  Raw materials that include pentobarbital do not meet our specifications."  ¶14.  Thus, Defendant either knowingly or recklessly failed to test the 2017 and 2018 retained tallow that contained alarming pentobarbital levels of over 800 ppb.  ¶¶32-33.  Indeed, Defendant's own actions show the misleading representations concerning its supposed rigorous and strict quality control.  Specifically,

3

1    Defendant only recently started testing "all of [its] products for the presence of pentobarbital as a

2    new quality assurance protocol." ¶46. Defendant further acknowledged the lack of proper quality

3    control and oversight by stating: "In addition, we are enhancing our sourcing and supplier

4    oversight procedures to ensure this does not occur again." *Id.*

5    **III.   LEGAL STANDARDS**

6          A Rule 12(b)(6) motion is "viewed with disfavor and is rarely granted." *McDougal v. Cty.*

7    *of Imperial*, 942 F.2d 668, 676 n.7 (9th Cir. 1991).[4]   A court must accept as true all of the

8    plaintiff's allegations of material fact and construe them in the light most favorable to the plaintiff,

9    and not allow a defendant to substitute its own facts or its own interpretation of those facts.

10   *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008). The complaint need not

11   "contain detailed factual allegations," but only "enough facts to state a claim to relief that is

12   plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009). Where

13   claims are subject to the heightened pleading standard of Rule 9(b), a complaint's fraud

14   allegations need only be "specific enough to give defendants notice of the particular misconduct

15   which is alleged to constitute the fraud charged so that they can defend against the charge[.]" *Bly-*

16   *Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Finally, when considering a facial

17   attack of subject matter jurisdiction under Rule 12(b)(1), a court is required to accept as true the

18   allegations in a plaintiff's complaint. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

19   **IV.   ARGUMENT**

20        **A.   Defendant's Refund Offer Does Not Moot Plaintiffs' Claims**

21        Plaintiffs seek damages beyond the product recall and full refund offered by Defendant,

22   and their claims are therefore not moot.[5] "One of the principal ways a claim becomes moot is

23

24   [4] Here, as throughout, all emphasis is deemed added and citations, quotation marks, and
     footnotes are deemed omitted unless otherwise noted.

25   [5] As an initial matter, Defendant's brief does not make clear whether it asserts that Plaintiffs'
26   claims are prudentially moot or moot under Article III standing. *See* MTD at 10 (stating that
     courts have the power to find cases prudentially moot, but later citing cases where courts
27   dismissed cases as moot under Article III). Prudential mootness and Article III mootness are
     not the same legal theory. Article III mootness arises from the Constitution's case and

28

1   when the opposing party has agreed to everything demanded by the other party." *Main v.*
2   *Gateway Genomics, LLC*, No. 15CV2945 AJB (WVG), 2016 WL 7626581, at *4 (S.D. Cal. Aug.
3   1, 2016) ("*Gateway*") (citing *GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc.*, 650 F.3d 1257, 1267
4   (9th Cir. 2011)).  Defendant has certainly not done so here.

5   Courts agree that where plaintiffs seek damages beyond restitution, as is the case here, a
6   refund offer does not moot the claims.  *Gateway*, 2016 WL 7626581, at *6 ("Even if Defendant
7   offered to fully refund [plaintiff] for her purchase … prior to when the first amended complaint
8   was filed, that does not moot her claims."); *see also Arthur v. Louis Vuitton N. Am. Inc.*, No. CV
9   08-4731 AHM (FFMX), 2010 WL 11463276, at *3 (C.D. Cal. May 6, 2010) (plaintiff's refusal of
10  a defendant's offer of a refund (plus interest) does not render the lawsuit moot where the plaintiff
11  also requests damages beyond restitution (injunctive relief, punitive damages, etc.)); *Haddix v.*
12  *Gen. Mills, Inc.*, No. 2:15-CV-02625-MCE-AC, 2016 WL 2901589, at *6 (E.D. Cal. May 17,
13  2016) (finding plaintiff's claims not moot where there has been a full refund and replacement of
14  the product, noting that "Plaintiff requests damages that exceed the scope of the recall program
15  and relate to Defendants' business practices prior to instituting the recall program"); *Mednick v.*
16  *Precor, Inc.*, No. 14 C 3624, 2014 WL 6474915, at *2 (N.D. Ill. Nov. 13, 2014) ("To moot a
17  plaintiff's claims, the offer must 'satisfy the plaintiff's entire demand' such that 'there is no dispute
18  over which to litigate and thus no controversy to resolve.'"); *Camasta v. Omaha Steaks Int'l, Inc.*,
19  No. 12-CV-08285, 2013 WL 4495661, at *7 (N.D. Ill. Aug. 21, 2013) (defendant's offer of a full
20  refund did not moot plaintiff's claims, because plaintiff also sought "statutory damages, punitive
21  damages, attorney's fees and costs, and injunctive relief").  For example, under the Consumer
22  Legal Remedies Act, Cal. Civ. Code §§1750, *et seq.* ("CLRA"), even if a plaintiff cannot bring a

---

24  controversy requirement.  *See Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2016 WL
25  693283, at *5 (N.D. Cal. Feb. 22, 2016). Prudential mootness, by contrast, "addresses not the
    power to grant relief, but the court's discretion in the exercise of that power."  *Id.* Prudential
    mootness generally only applies where the plaintiff seeks injunctive or declaratory relief.  *Id.*
26  (citing *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011)).  Here, Plaintiffs seek equitable
    relief as well as damages, and thus the prudential mootness theory does not apply, and
27  Defendant has not set forth arguments to show otherwise.  *See id.* at *7.

5

1    claim for restitution, they can "still seek other forms of monetary relief such as punitive damages

2    and attorney fees." *Chowning v. Kohl's Dep't Stores, Inc.*, No. CV 15-08673 RGK (SPX), 2016

3    WL 1072129, at *5 (C.D. Cal. Mar. 15, 2016) (citing Cal. Bus. & Prof. Code §§1780(a)(4), (e)),

4    *aff'd*, 733 F. App'x 404 (9th Cir. 2018).

5        First, the injunctive relief Plaintiffs seek goes well beyond a recall of the Contaminated

6    Dog Foods.    In the Amended Complaint, Plaintiffs specifically ask for an order requiring

7    Defendant to engage in a corrective advertising campaign. AC, Prayer for Relief, ¶D.  Plaintiffs

8    also seek an order enjoining Defendant "from selling the Contaminated Dog Foods until

9    pentobarbital is removed" and from "selling the Contaminated Dog Foods in any manner." AC,

10   Prayer for Relief, ¶¶B-C.  This would require much more than a product recall, including a public

11   acknowledgment by Defendant that it sold Contaminated Dog Food and identification of a plan to

12   prevent such contamination in the future.  *Id.*; *see also* ¶109 ("[S]hould Plaintiff Jilek encounter

13   the Contaminated Dog Foods in the future, she could not rely on the truthfulness of the

14   packaging, absent corrective changes to the packaging and advertising of the Contaminated Dog

15   Foods.").  Moreover, the Contaminated Dog Foods are still available for purchase in stores and

16   online, so the recall was not effective, and the harm suffered by the proposed classes is ongoing.

17   ¶67.

18       Second, Defendant has not offered to pay Plaintiffs interest on the amount spent

19   purchasing the Contaminated Dog Foods, which courts have found is necessary in order to find a

20   claim moot due to a refund.  *See, e.g.*, *Weidenhamer v. Expedia, Inc.*, No. C14-1239RAJ, 2015

21   WL 1292978, at *4 (W.D. Wash. Mar. 23, 2015) ("full refund is not full compensation unless it

22   comes with compensation for the lost time value of the money," and thus Article III standing

23   exists where the defendant has not provided interest on the total amount the consumer spent on

24   defendant's product); *Mitchell Tracey v. First Am. Title Ins. Co.*, 935 F. Supp. 2d 826, 838-39 (D.

25   Md. 2013).

26       Finally, Plaintiffs brought claims under the laws of thirteen different states, including

27   seventeen different state law statutes.  *See* MTD at 2, n.3.  These various claims provide for

28

6

damages beyond a refund of the purchase price.[6]  *See*, *e.g.*, Illinois Consumer Fraud Act, 815 ILCS 505, *et seq.* (punitive damages); Tennessee Consumer Protection Act, Tenn. Code Ann. §§47-18-101, *et seq.* (providing for treble damages for willful or knowing violations); West Virginia Consumer Credit and Protection Act, W. Va. Code Ann. §46A-2-101, *et seq.* (providing for the greater of actual damages or $200); Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. §§17.41, *et seq.* (punitive damages); Washington Unfair Business Practices Act, Wash. Rev. Code Ann. §§19.86.010, *et seq.* (providing for treble damages).  Although Defendant states that Plaintiffs cannot seek punitive damages under applicable law, Plaintiffs disagree as will be discussed in Section IV.J. *infra*.  Thus, unlike in *Tosh-Surrhyne v. Abbott Labs., Inc.*, No. 10-2603, 2011 WL4500880, at *3-5 (E.D. Cal. Sept. 27, 2011) and other cases cited by Defendant, Plaintiffs seek relief beyond the recall and restitution, and their claims are not moot.  *See also Winzler v. Toyota Motor Sales, U.S.A., Inc.*, 681 F.3d 1208, 1209 (10th Cir. 2012) (plaintiff sought only a recall and repair of the defective vehicle at issue); *Hadley v. Chrysler Grp. LLC*, No. 13-13665, 2014 WL 988962, at *6 (E.D. Mich. Mar. 13, 2014) (finding the claims moot because plaintiffs failed to allege a repair to the defective vehicle would not cure the defect, unlike here where Plaintiffs have alleged they cannot trust Defendant's marketing of its products as safe absent additional court intervention), *aff'd*, 624 F. App'x 374 (6th Cir. 2015), Plaintiffs' claims are not moot and should proceed.

### B.    Plaintiffs Have Satisfied Rule 8 and Rule 9(b)

Defendant's exaggerated interpretation of Rule 9(b) and its scope does not defeat Plaintiffs' claims.  First, Rule 9(b) does not universally apply to Plaintiffs' claims.  *See*, *e.g.*, *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 561 (S.D.N.Y. 2016) (New York General Business Law §349 claims "are not subject to the particularity requirements of Rule 9(b)").  Nor is it applied equally.  "[W]here allegations rest on claims of omission, this standard is relaxed

---

[6] Additionally, none of the named Plaintiffs have actually received a refund from Defendant. *See generally* ¶¶71-111.  Thus, their Article III standing is not mooted.  *See Gateway*, 2016 WL 7626581, at *4.

MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS                                          LEAD CASE NO. 4:18-CV-00861-JSW

because, '[f]or example, a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act.'" *Huntair, Inc. v. Gladstone*, 774 F. Supp. 2d 1035, 1044 (N.D. Cal. 2011) (second attention in original).  Second, Plaintiffs are not vaguely claiming that Defendant's Contaminated Dog Food made their pets sick.  Defendant sold products marketed as dog food that were not suitable for consumption by dogs.  Plaintiffs have identified a specific substance that rendered the dog foods inedible and unsafe, pentobarbital; a specific contamination level, between 529 and 852 ppb; a specific period of time, 2008 to the present; specific products, namely the Gravy Train and Kibble n' Bits brands; a specific public report and recall, occurring between February and March of 2018; specific misrepresentations and omissions, discussed in Section IV.E. *infra*; and specific damages, the purchase of the Contaminated Dog Foods.  ¶¶11-30, 32-34, 113, 127.  These allegations are "'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Huntair*, 774 F. Supp. 2d at 1044.  Thus, Rule 9(b) is satisfied.[7]

## C.    Plaintiffs' State Common Law Claims Are Sufficiently Pled

Defendant argues Plaintiffs' common law negligent misrepresentation, negligence, and fraudulent concealment claims ("the Common Law Claims") on behalf of "the Classes" must be dismissed because those claims do not specify which state law governs. MTD at 13-14.  This argument is unpersuasive.  The AC seeks class certification for a national Class or, in the alternative, thirteen state Subclasses.  ¶¶127-28.  "Classes" is a defined term, which refers collectively to the proposed national Class and the thirteen proposed state Subclasses.  ¶129.  The AC asserts the Common Law Claims on behalf of "Classes"—meaning on behalf of the national Class and the state Subclasses.  ¶129.  The AC asserts the Common Law Claims on behalf of "the

---

[7]  As to Plaintiffs' other causes of action, Rule 9(b) does not apply. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003) ("The text of Rule 9(b) requires only that in 'all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity.' The rule does not require that allegations supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct.") (ellipses in original).

Classes"—meaning on behalf of the national Class and the state Subclasses.  With respect to the national Class, California law governs those claims because Defendant is headquartered in San Francisco, California, and the misleading advertising and labeling was prepared and/or approved in the State of California and was disseminated from California.  ¶112.  But in the alternative, the law of each state Subclass should apply to the Common Law Claims of that Subclass.  This is an entirely plausible reading of the AC and does not require dismissal.[8]  *Cf. Romero v. Flowers Bakeries, LLC*, No. 5:14-cv-05189-BLF, 2016 WL 469370, at *11-12 (N.D. Cal. Feb. 8, 2016) (where court dismissed common law claims because plaintiffs alleged only a nationwide class and failed to allege "under which state's laws she asserts those claims"); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 923 (N.D. Cal. 2012) (a plaintiff can allege alternative classes at the pleading stage).  Accordingly, Defendant's argument should be rejected, and the Court should analyze the sufficiency of Plaintiffs' Common Law Claims under the laws of each of the state Subclasses.[9]

## D.    Plaintiffs Sufficiently Alleged Knowledge or Intent to Deceive by Defendant

Defendant misses the mark when arguing that Plaintiffs have not adequately alleged Defendant's knowledge or intent to defraud consumers when selling the Contaminated Dog Foods.  MTD at 14-16.  In doing so, Defendant attempts to misconstrue Plaintiffs' detailed and specific allegations as "vague" and fully ignores that:

> "[T]he requirements of Rule 9(b) may be 'relaxed as to matters peculiarly within the opposing party's knowledge,' if the plaintiffs cannot be expected to have personal knowledge of the facts prior to discovery."  Similarly, for allegations based upon "information and belief" to be facially plausible, either the facts on which the allegations are based must be "peculiarly within the possession and control of the defendant," or the belief must be "based on factual information that makes the inference of culpability plausible."

---

[8] Dismissal here would be inefficient as Plaintiffs would simply add a parenthetical under their Common Law Claims to clarify the state laws that apply to those claims.

[9] If the Court dismisses Plaintiffs' Amended Complaint on these, or other grounds—which it should not—Plaintiffs respectfully request leave to amend.

9

*In re Roger*, No. AP 6:16-AP-1199-MH, 2018 WL 1779336, at *3 (C.D. Cal. Apr. 12, 2018); *see also Dairy Rd. Partners v. Maui Gas Ventures LLC*, No. CV 16-00611 DKW-KJM, 2018 WL 3945373, at *11 (D. Haw. Aug. 16, 2018).   Here, the precise contents of the Contaminated Dog Foods, the quality control actually utilized by Defendant, and any relevant testing results on relevant raw ingredients and/or the Contaminated Dog Foods are "peculiarly" and "exclusively" within Defendant's knowledge; it is not something of which Plaintiffs can be expected to have personal knowledge at the pleading stage.   And, properly applying the relaxed standard here, the AC adequately alleges Defendant's knowledge and intent to deceive.

Regardless, the AC provides numerous factual allegations establishing knowledge and/or intent to deceive consumers.   For example, the AC alleges:

- "It is the responsibility of the manufacturer [Defendant] to take the appropriate steps to ensure that the food they produce is safe for consumption and properly labeled"  ¶5;

- "Defendant issued a statement assuring consumers, including Plaintiffs and the proposed Classes, that it was 'confident in the safety of our products ….'"  ¶13;

- "Defendant admitted that pentobarbital is 'not something that is added to pet food. However, it could unintentionally be in raw materials provided by a supplier.   We regularly audit our suppliers and have assurances from them about the quality and specifications of the materials they supply us.   Raw materials that include pentobarbital do not meet our specifications.'"  ¶14;

- The source of the contaminated ingredient—tallow—came from a supplier that "knowingly works with meat by-product recycling, including animal by-products not suitable for human consumption.   In fact, it is publicly disclosed that MOPAC has accepted euthanized horses."  ¶37;

- Given Defendant's publicly touted rigorous auditing process, "Defendant knew or recklessly chose to ignore that the Contaminated Dog Foods were adulterated pet food as it retained samples of the tallow that should have been tested based on the claimed

MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS

LEAD CASE NO. 4:18-CV-00861-JSW

practices and standards by Defendant and the public knowledge that MOPAC has accepted euthanized horses." ¶40;

- "Defendant admittedly retained samples of the tallow from JBS. These same samples showed the alarmingly high levels of pentobarbital once tested in response to the independent investigation by WJLA. Thus, Defendant either knowingly included the contaminated tallow as an ingredient in its dog food products or purposefully ignored the publicly touted testing program it has implemented 'to assess the safety of quality of the ingredients' in manufacturing the Contaminated Dog Foods." ¶44; and

- "Defendant has, and had, exclusive knowledge of the physical and chemical make-up of the Contaminated Dog Foods." ¶120.

These allegations, considered under the relaxed standard, clearly "make[] the inference of culpability plausible." That inference is that (1) Defendant's known duty to ensure that the Contaminated Dog Foods did not contain pentobarbital would require testing of all ingredients (which it had exclusive and superior knowledge of), including the 2017 and 2018 contaminated tallow retained by Defendant; and (2) Defendant's own touted quality control standards and auditing requirements would have required the testing of the tallow from a known rendering supplier that accepts euthanized horses. Thus, at this point, without discovery, Plaintiffs have sufficiently alleged knowledge and the related intent to deceive consumers by not disclosing the true nature and quality of the adulterated Contaminated Dog Foods. *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007).[10]

None of Defendant's cases show otherwise. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041-42 (9th Cir. 2011) (in considering a claim for conspiracy to commit

---

[10] Defendant also argues that the AC fails to establish a duty to disclose under Washington law without any citation to authority. MTD at 14-15. However, allegations of exclusive knowledge and superior knowledge are alone sufficient under Washington law. *See In re A.M.C.*, 182 Wash. App. 1048, 2014 WL 3859891, at *2 (Wash. App. Aug. 5, 2014) ("Another example of a duty to disclose arises where one party relies on the other party's superior knowledge or experience.").

fraud under Arizona law, the Court found that "plaintiffs have not identified any representations made to them … that were false and material …. Similarly, the plaintiffs have not alleged that they relied on any misrepresentations ….."); *Facebook, Inc. v. Grunin*, 77 F. Supp. 3d 965, 970-71 (N.D. Cal. 2015) (fraud claim not based on matters peculiarly within the defendant's knowledge as it involved defendant sending emails under a different name to receive access to Facebook). As such, this Court should find that the AC sufficiently pleads knowledge and/or intent to deceive at the pleadings stage.

### E. Plaintiffs' Statutory Consumer Protection Claims Are Well Pled

Plaintiffs allege significant affirmative misrepresentations and omissions by Defendant regarding its Contaminated Dog Foods that resulted in widespread harm and violated the consumer protection statutes of multiple states. As stated below and in Section VI.B *supra*, these allegations easily satisfy the pleading requirements of Rule 9(b) and survive Defendant's Rule 12(b) Motion.

#### 1. Plaintiffs Allege Actionable Affirmative Misrepresentations and Omissions

Defendant markets the Contaminated Dog Foods as food suitable for consumption by dogs; its labels clearly impart this quality, and Plaintiffs purchased the Contaminated Dog Foods for that purpose. ¶¶71-113. Defendant also claims that the "Contaminated Dog Foods are '100 percent complete and balanced nutrition' without any mention that the Contaminated Dog Foods are in fact adulterated and contain pentobarbital." ¶52. Defendant further promised that its products met USDA, AAFCO, and FDA standards. ¶56. Yet the Contaminated Dog Foods that Plaintiffs purchased are unsuitable for consumption under any circumstance, and as Plaintiffs allege in the AC, the presence of pentobarbital is a clear violation of the letter and spirit of these guidelines and requirements. ¶¶2-8, 57. The presence of pentobarbital, for which there is no safe or allowable level, is wholly contrary to these statements. ¶¶3-8. It renders the food adulterated, meaning "poorer in quality" and, according to the FDA, not acceptable for consumption or sale. *Id*. 3-8, 32. Defendant also falsely stated, through press releases, that the levels of pentobarbital

found in its Contaminated Dog Foods were "extremely low" and "d[id] not pose a threat to pet safety." ¶34. In fact, the disclosed tainted ingredient—tallow—contained "alarmingly high levels of pentobarbital"; the Contaminated Dog Foods were neither complete nor balanced, nutritious, nor suitable for consumption; and Defendant's claims to the contrary were and are false. ¶¶3-8, 32.

Defendant's statements are not "mere puffery." They are provably false. Indeed, while some statements on packaging could be considered "puffery," statements on the package that are intended to be taken as a factual assertion, give the distinct and unequivocal assurance that the product will not contain a barbiturate. The phrases "100 percent complete and balanced nutrition," "providing safe, healthy, and high-quality food" with "the purest ingredients," and "nourishing meal" all carry a specific meaning as to the quality of the dog food that is disproven by the inclusion of pentobarbital. Unlike the cases cited by Defendant, this is not an instance of "real" filet mignon versus filet mignon "flavor." *Blue Buffalo Co. v. Nestle Purina Petcare Co.*, No. 15-cv-384, 2015 WL 3645262, at *9-10 (E.D. Mo. June 10, 2015). Nor are Defendant's statements "general assertion[s] of superiority or opinion," such as the terms "gourmet," "classic," or "premium." *Id.* Rather, it is Defendant's promises that the Contaminated Dog Foods are pure, nourishing, and can be legally sold as dog food as adulterated that is false.

Unquestionably, the Contaminated Dog Food contains a Class II controlled substance that is indisputably dangerous, an unacceptable ingredient, non-compliant with USDA, AAFCO, and FDA standards, and is not allowed at any safe level in pet food. ¶¶2-8. As a result, Defendant's statements went well beyond puffery and were likely to deceive consumers. *See, e.g., Williams*, 552 F.3d at 938-40 (applying "reasonable consumer" test to California Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq.* ("UCL") and CLRA claims and finding "Fruit Juice" label likely to deceive"); *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002), *as modified* (May 22, 2002) (finding the UCL and California False Advertising Law, Cal. Bus. & Prof. Code §17500, *et seq.* ("FAL") "prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or

13

confuse the public'"); Ga. Code Ann. §10-1-372 (prohibiting representations that goods have characteristics or uses they do not or are of a particular standard, quality of grade if they are not); Ga. Code Ann. §10-1-421 (prohibiting "untrue or fraudulent" statements in advertising).[11]

### 2.    Plaintiffs Adequately Allege Reliance

Defendant grossly overstates Plaintiffs' pleading obligations with respect to reliance.  Each Plaintiff has alleged that he or she (1) was, based on Defendant's false and misleading representations, unaware of the presence of pentobarbital in its dog foods and (2) would not have purchased the Dog Foods "if [s]he knew that [they] contained any level of pentobarbital or that Defendant utilized animals have been euthanized as a protein source."  ¶¶71-111.  Plaintiffs have also described, in great detail, the materiality of the Defendant's fraud, namely the significant danger pentobarbital poses to pets.  ¶¶2-8.  This is all that is required.  *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1198 (9th Cir. 2016); *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 881 (Cal. 2011); *see also Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593, 595 (Ill. 1996) ("Plaintiff's reliance is not an element of [Illinois] statutory consumer fraud …." and question of proximate cause "best left to the trier of fact"); *Laughlin v. Target Corp.*, No. 12-cv-489, 2012 WL 3065551, at *5 (D. Minn. July 27, 2012) (denying motion to dismiss Minnesota consumer fraud claim where plaintiff alleged "she would not have purchased the [] footwear had she known that the shoes did not provide the advertised benefits").

### 3.    Defendant Knew or Should Have Known that Its Dog Foods Were Contaminated

Defendant's attempt to defeat Plaintiffs' fraudulent omission claims fails on two levels. First, the consumer protection statutes of California and Minnesota each allow for such claims. *See In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 794-95 (N.D. Cal. 2017) (finding CLRA, UCL, and FAL claims based on omissions actionable when the defendant "(1) ... is in a

---

[11] For these same reasons, Defendant's contention that Plaintiffs' negligent misrepresentation claims should be dismissed because they do not comply with Rule 9(b) is incorrect. *See* MTD at 29-30. These claims should proceed.

14

fiduciary relationship with the plaintiff; (2) ... had exclusive knowledge of material facts not known to the plaintiff; (3) ... actively conceals a material fact from the plaintiff; [or] (4) ... makes partial representations but also suppresses some material facts); *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 258 (2011), *as modified* (Dec. 28, 2011) ("Unlike common law fraud, a UCL fraud claim 'can be shown even **without** allegations of actual deception, reasonable reliance and damage'; what is required to be shown is 'that members of the public are likely to be deceived.'"); *Podpeskar v. Makita U.S.A. Inc.*, 247 F. Supp. 3d 1001, 1011 (D. Minn. 2017) (recognizing a duty to disclose where a party "(1) ... has made a representation and must disclose more information to prevent the representation from being misleading; (2) ... has special knowledge of material facts to which the other party does not have access; and (3) ... stands in a confidential or fiduciary relation to the other party").   In fact, "[a] plaintiff can also survive a motion to dismiss if he plausibly pleads that the defendant 'should have known' about the defect."  *Long v. Graco Children's Prods. Inc.*, No. 13-cv-01257, 2013 WL 4655763, at *6, *8 (N.D. Cal. Aug. 26, 2013); *Allen v. Bank of Am., N.A.*, 933 F. Supp. 2d 716, 727 (D. Md. 2013) ("[A] defendant who knows **or has a reason to know** of a defect may be liable under the [Maryland Consumer Protection Act] for failing to disclose the defect …."); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 548 (D. Md. 2011) (plaintiff adequately alleged defendant knew or should have known of defect).   Second, Plaintiffs' AC clearly establishes Defendant's duty to disclose.

Plaintiffs' allegations, which must be accepted as true, go far beyond the allegations that Defendant "maintains rigorous quality and supplier standards." MTD at 20.  Plaintiffs allege that "Defendant, has, and had, exclusive knowledge of the physical and chemical make-up of the Contaminated Dog Foods."  ¶120.  It "had notice of the real risk that pentobarbital may appear in the Contaminated Dog Foods if the manufacturing and sourcing were not properly monitored" for a number of reasons.  ¶121.  Thus, it knew or should have known of the presence of pentobarbital. First, Defendant's supplier "has been plagued by investigations, recalls, and other red flag situations that should have alerted Defendant it needs to confirm the safety, quality, and reputation of JBS and the products purchased from JBS for inclusion in the … Dog Foods."  ¶¶37-

15

40.  Second, Defendant itself has previously sold dog food contaminated with pentobarbital.  ¶41. Third, Defendant has assured the public, "All of our products are made under a system of strict food safety and quality controls combined with ongoing inspection and monitoring."  ¶42.  Thus, Plaintiffs adequately allege that Defendant either knew or should have known that its dog foods were contaminated, and it actually knew there was a significant risk of contamination through its supply chain.  ¶¶120-121.

Defendant's failure to disclose the risk of contamination based on using a rendering facility as a supplier, and its failure to properly source ingredients for its Contaminated Dog Foods, had real significance and consequences.   Here, like in *Collins*, the public, including Plaintiffs, "had an expectation or an assumption about" the safety of the Contaminated Dog Foods and their suitability for consumption. 202 Cal. App. 4th at 255-58.  At the same time, Defendant had exclusive knowledge about the risks and dangers that existed in its supply chain, which were obviously material to Plaintiffs, and it failed to disclose those dangers and risks.   These allegations are wholly sufficient to give rise to Plaintiffs' statutory claims based on Defendant's omissions.

### 4.  Plaintiffs Satisfied Statutory Notice Requirements

Counsel for Plaintiffs sent four separate certified letters to Defendant notifying it of its "violation of the CLRA concerning the aforementioned representations and pentobarbital."  ¶154. These letters were detailed in their descriptions of Defendant's alleged misconduct, and though the letters cite only to the CLRA, plaintiff Thomas's claims are based on the very same conduct, and Defendant was provided the opportunity to cure.  Defendant also received notice of the various alleged violations through media reports and from the FDA.  Finally, it was on notice as a result of its actual knowledge of the pentobarbital contamination.  As a result, plaintiff Thomas satisfied Virginia's requirement to provide notice "in writing and by certified mail, return receipt requested, of the alleged violation" and the opportunity to cure.  W. Va. Code Ann. §46A-6-106(c).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 5. Plaintiffs Have Standing to Seek Injunctive Relief

Plaintiffs specifically allege that "Defendant's unlawful conduct is continuing."  ¶220 (Ga.).  Plaintiff Roupe alleges a "desire to purchase these products in the future if she can be assured that the … Dog Foods are … properly unadulterated dog food that meets the advertising claims."  ¶229 (Ga.).  *Contra Silverstein v. Procter & Gamble Mfg. Co.*, No. CV 108-003, 2008 WL 4889677, at *3 (S.D. Ga. Nov. 12, 2008) ("Their harm, therefore, is entirely in the past and will not recur unless Plaintiffs buy the product again.").  Plaintiffs Roupe and Jilek allege that, "in the future, [they] could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising …."  ¶¶75, 109 (Minn.).  This is enough to satisfy the standing requirements of the consumer protection statutes in Georgia and Minnesota.

## 6. Plaintiff Sebastiano's Florida Deceptive and Unfair Trade Practices Act Claim Is Well Pleaded

Plaintiff Sebastiano alleges that he purchased Gravy Train products, trusted Defendant's representations (described *supra* Section E.1), and that his dog suffered serious injuries that ultimately led to his death at the age of 7.5.  ¶¶76-79.  The AC is, as described *supra* Sections E.1 and E.3, replete with allegations that Defendant acted intentionally, knowingly, and with the intent to deceive.  Moreover, plaintiff Sebastiano explicitly alleges that Defendant's conduct was "unconscionable, illegal, unfair, and deceptive."  ¶238.  Defendant failed to comply with USDA, AAFCO, and FDA standards, as promised.  ¶¶56-57.  And it knowingly sold food to plaintiff Sebastiano that was unsafe for consumption.  ¶¶2-8, 76-79.  For Defendant to now argue that its alleged knowing sale of dog food contaminated with lethal pentobarbital does not "offend[] established public policy" and is not "immoral, unethical, oppressive or unscrupulous" borders on frivolous. MTD at 22-23.  The opinion Defendant relies on is a summary judgment ruling in a case where the plaintiffs did not adduce any evidence in support of their claims, and it has no relevance here.  *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1353 (S.D. Fla. 2017).  Plaintiff Sebastiano's allegations easily satisfy the requirements of the Florida Deceptive and Unfair Trade Practices Act and should be sustained.

MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS

LEAD CASE NO. 4:18-CV-00861-JSW

1

2

### 7.   Plaintiff Jilek Has Standing Under the Minnesota Commercial Feed Law

3

4   Defendant's attempt to skirt Minnesota's Commercial Feed Law ("CFL") ignores the

5   purpose and scope of Minnesota's private attorney general statute.   That law allows private

6   citizens injured by "violations of the law of this state respecting unfair, discriminatory, and other

7   unlawful practices in business, commerce, or trade" to "bring a civil action and recover damages,

8   together with costs and disbursements, including costs of investigation and reasonable attorney's

9   fees, and receive other equitable relief as determined by the court."  Minn. Stat. Ann. §8.31.  The

10   CFL, which deems the manufacture and distribution of adulterated commercial feed unlawful,

11   clearly falls within Section 8.31's purview, and Defendant does not dispute in its motion that the

12   dog food is included within the definition of "commercial feed."   Thus, Plaintiff Jilek properly

13   brings suit as a private attorney general to enforce the CFL and recover damages.  ¶542.

### F.   Plaintiffs' Negligence and Negligent Misrepresentation Claims Should Not be Dismissed

14

15   ### 1.   Defendant Mischaracterizes Plaintiffs' Negligence Claims

16   Contrary to Defendant's argument, Count V does not allege a separate claim for

17   negligence per se.  MTD at 24.   Rather, Count V is a traditional negligence claim for which

18   Plaintiffs have plead sufficient facts to proceed.[12]  Negligence requires a showing of duty, breach

19   of duty, causation, and damages.  *See Steinle v. City & Cty. of San Francisco*, 230 F. Supp. 3d

20   994, 1019 (N.D. Cal. 2017).   Plaintiffs have pled facts for each of these elements.  ¶¶174-180.

21   Specifically, Plaintiffs allege (1) Defendant owed a duty of care to Plaintiffs based on its

22   knowledge of the source of ingredients in the Contaminated Dog Foods, its ability to audit its

23   suppliers, and its knowledge of the presence of pentobarbital in ingredients in the past, as well as

24

25   ─────────

26   [12] However, negligence per se can be used to establish a presumption of negligence under California law.  *See In re Experian Data Breach Litig.*, No. SACV 15-1592 AG (DFMX), 2016 WL 7973595, at *8 (C.D. Cal. Dec. 29, 2016) (citing *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1285-86 (Cal. Ct. App. 2006)).

27

28

1  statutory duties under both federal and state law;[13] (2) Defendant's breach of its various duties by

2  failing to disclose the presence of pentobarbital in the Contaminated Dog Food; (3) Defendant's

3  breach directly caused harm to Plaintiffs; and (4) Plaintiffs suffered damages as a result.

### 2.   The Economic Loss Doctrine Does Not Bar Plaintiffs' Negligence or Negligent Misrepresentation Claims

6       Plaintiffs' negligence and negligent misrepresentation claims under California law are not

7  barred by the economic loss doctrine.[14]   California has an exception to the economic loss rule

8  "where the contract was fraudulently induced."  *Bret Harte Union High Sch. Dist. v. FieldTurf,*

9  *USA, Inc.*, No. 1:16-CV-00371-DAD-SMS, 2016 WL 3519294, at *4 (E.D. Cal. June 27, 2016)

10  (quoting *Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268, 273 (Cal. 2004)); *see also*

11  *Arabian v. Organic Candy Factory*, No. 2:17-CV-05410-ODW-PLA, 2018 WL 1406608, at *7

12  (C.D. Cal. Mar. 19, 2018).  Moreover, "the California Supreme Court has not spoken directly on

13  whether the economic loss rule bars negligent misrepresentation claims …."  *See Sustainable*

14  *Ranching Partners, Inc. v. Bering Pac. Ranches Ltd.*, No. 17-CV-02323-JST, 2018 WL 1696805,

15  at *2 (N.D. Cal. Apr. 6, 2018).[15]  Here, Plaintiffs allege that Defendant has engaged in fraud in its

16  sale of the Contaminated Dog Foods to Plaintiffs because its "statements that the Contaminated

17  Dog Foods are pure, quality[,] healthy, and safe and provide 100 percent complete and balance[d]

18  nutrition are literally false and likely to deceive the public, as is Defendant's failure to make any

19  mention that the Contaminated Dog Foods are adulterated and contain pentobarbital."  ¶167; *see*

20  *also* ¶¶159, 225, 603.

---

[13] Defendant argues that these underlying statutory claims fail and thus Plaintiffs' negligence claim must fail.  MTD at 24-25.  As discussed *supra*, that is not the case.

[14] Plaintiffs concede that the economic loss doctrine bars its negligence claims under Tennessee and West Virginia law.

[15] However, the *Sustainable Ranching* case does note that some courts in this district have addressed the issue and found negligent misrepresentation claims barred unless there are allegations of an affirmative misrepresentation and that the misrepresentation exposed the plaintiff to independent personal liability.  2018 WL 1696805, at *2.

19

1    Similarly, Texas law does not have a "bright line ruling barring negligence actions for

2  purely economic losses." *Club Escapade 2000, Inc. v. Ticketmaster, L.L.C.*, No. EP-11-CV-166-

3  KC, 2011 WL 5976918, at *8 (W.D. Tex. Nov. 29, 2011) (citing *Sharyland Water Supply Corp.*

4  *v. City of Alton*, 354 S.W.3d 407, 418-19 (Tex. 2011)).  Rather, the court should "evaluate the

5  facts and issues of the individual case."  *Id.*  Plaintiffs' negligent misrepresentation claim is not

6  barred because Plaintiffs have pled that they paid more for the Contaminated Dog Foods than they

7  were worth (i.e. "more than contemplated by the contract") due to Defendant's misrepresentations,

8  and that, but for those material misrepresentations, they would not have purchased the

9  Contaminated Dog Foods at all.  *See Burbank v. Compass Bank*, No. 1:15-CV-60, 2016 WL

10  3618691, at *6 (E.D. Tex. Mar. 29, 2016).

11    Like Texas, Washington does not bar negligent misrepresentation claims simply because

12  the injury is an economic loss, particularly where it arises out of a breach of a tort law duty of

13  care, as is the case here.  *See Eastwood v. Horse Harbor Found., Inc.*, 241 P.3d 1256, 1261

14  (Wash. 2010).  Although Plaintiffs do allege there is a contract between Plaintiffs and Defendant

15  in support for their breach of warranty claims, that alleged contract does not "allocate[] risk and

16  future liability" such that the economic loss rule applies.  *Reynolds Metals Co. v. Alcan Inc.*, No.

17  C04-0175RJB, 2006 WL 1169790, at *3 (W.D. Wash. May 1, 2006).  Moreover, Plaintiffs'

18  negligence claim is based on various breaches, including Defendant's breach of a tort law duty of

19  care by selling adulterated food in violation of applicable laws and regulations (¶177) and thus is

20  not barred by the economic loss rule.  *See* ¶¶177-178; *Borish v. Russell*, 230 P.3d 646, 650 (Wash.

21  2010), *as amended on denial of reconsideration* (June 29, 2010) ("In order for the economic loss

22  rule to apply and preclude tort damages for negligent misrepresentation, there must be a contract

23  between the parties.").

24    With respect to Plaintiffs' negligent misrepresentation claim under Maryland law,

25  Defendant misrepresents the application of the economic loss rule. In Maryland, the economic

26  loss rule does not bar negligent misrepresentation claims where the parties are in privity with one

27  another.  *See Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 155 A.3d 445,

20

28

452 (Md. Ct. App. 2017) ("In Maryland, the economic loss doctrine bars recovery when the parties are not in privity with one another ....").  The case Defendant cites, *Sun-Lite Glazing Contractors, Inc. v. J.E. Berkowitz, L.P.*, 37 F. App'x 677, 680 (4th Cir. 2002), does not address whether the economic loss rule bars a claim for solely economic loss.  *See* MTD at 27.  Rather, the citation Defendant relies on is a discussion of the elements of a negligent misrepresentation claim itself.  *Sun-Lite*, 37 F. App'x at 680.  In fact, by citing *Sun-Lite*, Defendant acknowledges it is in privity with Plaintiffs, and their Maryland negligent misrepresentation claims are not barred.

### 3.    Plaintiffs' Negligent Misrepresentation Claims Are Properly Pled

Plaintiffs bring negligent misrepresentation claims under California law on behalf of all alleged Classes (Count I).  Plaintiffs also allege negligent misrepresentation claims under the specific state laws for various subclasses, e.g. on behalf of the Tennessee Subclass (Count XX), Texas Subclass (Count XXX), Maryland Subclass (Count XXXIII), and Washington Subclass (Count XXXVIII).  Each of these claims should proceed.

Under California law, the elements of negligent misrepresentation are "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage."  *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1111 (C.D. Cal. 2015).  Plaintiffs have pled these elements.

Defendant asserts that Plaintiffs' claims under Tennessee, Washington, Texas, and Maryland law must fail because they do not include "any allegation that Defendant supplied information to guide Plaintiffs in their business transactions."  *See* MTD at 28.  But contrary to Defendant's misleading argument, there is no requirement that the false information be supplied in a "business transaction."  Rather, as made clear by Comment on Subsection (2) to Restatement (Second) of Torts §552 (Am. Law Inst. 1977), the maker of the misrepresentation does not need to have a particular person in mind when making the misrepresentation: "It is enough that the

maker … intends it to reach and influence … a group or class of persons … who might reasonably be expected … to have access to the information and foreseeably to take some action in reliance upon it."  Courts in Tennessee, Texas, Maryland, and Washington do not limit negligent misrepresentation claims as Defendant suggests.  *See Body Invest, LLC v. Cone Solvents, Inc.*, No. M2006-01723-COA-R3CV, 2007 WL 2198230, at *6 (Tenn. Ct. App. July 26, 2007) (discussing negligent misrepresentation and noting it can be present even without contractual privity); *Willis v. Marshall*, 401 S.W.3d 689, 699 (Tex. App. 2013) (the information must be provided to potential claimants "for whose benefit and guidance [the professional] intends to supply the information," not necessarily an identifiable individual); *Merriman v. Am. Guarantee & Liab. Ins. Co.*, 396 P.3d 351, 361, *review denied*, 413 P.3d 565 (Wash. 2017) ("A defendant may 'participate' in making a negligent misrepresentation without being in direct communication with the plaintiff."); *Griesi v. Atl. Gen. Hosp. Corp.*, 756 A.2d 548, 555 (Md. Ct. App. 2000) (a contract for a sale of goods can be a "special relationship" that "giv[es] rise to a duty to exercise reasonable care").

Defendant's sale of the Contaminated Dog Foods to Plaintiffs is clearly a "business transaction," and its representations about the safety and health benefits of the Contaminated Dog Foods were made to induce Plaintiffs to purchase the products. These claims should not be dismissed.

### G. Plaintiffs Pled Breach of an Express and Implied Warranty

#### 1. Defendant Created Express Warranties for All Its Products

Defendant claims that Plaintiffs failed to allege the existence of an express warranty tethered to the products at issue in this lawsuit.  MTD at 31.  But this argument ignores that Defendant's warranties apply to *all* of its products, including the Contaminated Dog Foods.  To state a claim for express warranty, Plaintiffs must simply allege the existence of an "affirmation of fact or promise" that "relates to the goods." Cal. Com. Code §2313; Fla. Stat. Ann. §672.313; Ala. Code §7-2-313; Ohio Rev. Code Ann. §1302.26; Tenn. Code Ann. §47-2-313; W. Va. Code

§46-2-313; Tex. Bus. & Com. Code Ann. §2.313; Md. Code Ann., Com. Law §2-313; Wash. Rev. Code Ann. §62A.2-313.  Plaintiffs have met this requirement.

The AC alleges Defendant made several factual or promissory statements related to the Contaminated Dog Foods.  Unless Defendant will concede that *some* of its products are not subject to its guarantees of safety, quality, and nutritional standards, then its statements unequivocally apply to *all* its products.  For example, as the AC alleges, Defendant's safety, quality, and nutritional standards apply to all its products:

> "*All* of our products are made under a system of strict food safety and quality controls ….  *All* of our programs are designed to exceed the Global Food Safety Initiative standards.  *Our products* are made with nutritious, quality ingredients that meet the applicable standards and specifications of [governmental and industry organizations]."

¶42.  Similarly, Defendant's other warranties apply to all its products, including the Contaminated Dog Foods.  *See* ¶43 (ingredient testing applies to all products); ¶45 (safety and quality through lab analysis and physical inspection applies to all products); ¶52 ("100% complete and balanced nutrition" applies to all products).  In short, Defendant's statements about its products set the standard to which Defendant must be held to account.  *Cf. Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1288 (9th Cir. 2017) ("[W]arranty law focuses on the seller's behavior and obligation … [and] help[s] define what the seller in essence agreed to sell." (internal quotation marks omitted)).  Accordingly, Defendant's argument that Plaintiffs have not alleged the existence of an express warranty tied to a specific product should be rejected.

Defendant further argues that the statement "100% complete and balanced nutrition" is nonactionable puffery.  MTD at 32.  To the contrary, this statement is sufficiently specific and verifiable to constitute a warranty.  Whether a statement constitutes an express warranty or puffery is a question of fact that should not be resolved on a motion to dismiss.  *See*, *e.g.*, *Lees v. Turek*, No. 87 C.A. 6, 1987 WL 15351, at *2 (Ohio Ct. App. Aug. 6, 1987); *Keith v. Buchanan*, 173 Cal. App. 3d 13, 21 (Cal. Ct. App. 1985); *Barb v. Wallace*, 412 A.2d 1314, 1317-18 (Md. Ct. App. 1980); *Gen. Supply & Equip. Co., Inc. v. Phillips*, 490 S.W.2d 913, 917 (Tex. Civ. App.

23

1972).  As a general matter, a statement is puffery only if it involves "outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude reliance by consumers."  *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990).  It is not puffery to advertise a product as "healthy," "nutritious," or "wholesome," because "consumers rely on health-related claims on food products in making purchasing decisions."  *Bruton v. Gerber Prods. Co.*, No. 12-cv-02412, 2014 WL 172111, at *11 (N.D. Cal. Jan. 15, 2014); *see also Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1092 (N.D. Cal. 2017) (finding statements cereal was "healthy" and "nutritious" constituted express warranty sufficient to survive motion to dismiss).[16]

The statement "100% complete and balanced nutrition" is a verifiable assertion about the nutritive properties of Defendant's products.  Defendant did not make this assertion by accident—it was designed to engender specific consumer beliefs about the Contaminated Dog Foods.  Because Defendant had "exclusive knowledge of the physical and chemical make-up of the Contaminated Dog Foods," its statements are not "so exaggerated as to preclude reliance by consumers."  *Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 246.  Therefore, it gives rise to an express warranty, and Defendant's breach—by selling products containing pentobarbital, for example—entitles Plaintiffs to a remedy.

Defendant relies on cases concerning the general law of puffery that are factually inapposite and do not compel dismissal.  *See, e.g.*, *White v. R.J. Reynolds Tobacco Co.*, No. CIV.A.H-99-1408, 2000 WL 33993333, at *3-4 (S.D. Tex. Sept. 27, 2000) (concluding statement

---

[16] Numerous other courts have reached a similar conclusion on a motion to dismiss. *See, e.g.*, *Boswell v. Costco Wholesale Corp.*, No. SACV 16-0278, 2016 WL 3360701, at *10 (C.D. Cal. June 6, 2016) (statements that coconut oil was "healthful and delicious" constituted warranties to survive motion to dismiss); *Holt v. Globalinx Pet, LLC*, No. SACV-12-0041, 2013 WL 3947169, at *11 (C.D. Cal. July 30, 2013) (concluding that labeling pet treats as "wholesome" constituted express warranty under Texas law to survive motion to dismiss); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011) (finding advertising campaign designed to convey Nutella as a "nutritious" and "healthy" breakfast food constituted express warranty).

24

that cigarette filter was "easy drawing" constituted puffery).[17] Accordingly, Defendant's argument should be rejected.

### 2. Defendant's Warranties Were a Basis of the Bargain for Its Products

Defendant asserts Plaintiffs failed to allege knowledge or reliance and causation regarding the warranties that did not appear on Defendant's product labels. MTD at 32-33. For Plaintiffs' claims based on Defendant's "100% complete and balanced nutrition" warranties, this argument fails. These statements appeared on Defendant's product labels, and the Complaint alleges Plaintiffs read and relied upon Defendant's product labels. ¶¶113, 118. Indeed, each Plaintiff has alleged that he or she (1) was, based on Defendant's false and misleading representations, unaware of the presence of pentobarbital in Defendant's dog foods and (2) would not have purchased the dog foods "if [s]he knew that [they] contained any level of pentobarbital or that Defendant utilized animals that have been euthanized as a protein source." ¶¶67-102. Therefore, the AC sufficiently alleges Plaintiffs had knowledge or relied on the warranties on Defendant's product labels, giving rise to a causally-related harm.

### 3. Plaintiffs Are Not Required to Provide Notice and Opportunity to Cure

Defendant argues that Plaintiffs' Florida, Alabama, Ohio, and Texas express warranty claims must be dismissed for failure to allege pre-suit notice and an opportunity to cure. MTD at 33-34. But Defendant's result-oriented argument is contrary to the plain language of the relevant statutes. The statutes require the buyer to "notify the *seller* of breach." Ala. Code §7-2-607; *accord* Fla. Stat. Ann. §672.607; Ohio Rev. Code Ann. §1302.65; Tex. Bus. & Com. Code Ann. §2.607. As Defendant argues in its brief, however, it did not sell its products to Plaintiffs. MTD at 37. A retail purchaser suing a manufacturer with whom he is not in privity is not subject to the

---

[17] *See Podpeskar*, 247 F. Supp. 3d at 1009 (concluding "even longer run time" was puffery "more akin to statements of "high quality" than specific promise); *Castaneda v. Fila USA, Inc.*, No. 11-cv-1033-H, 2011 WL 7719013, at * 4 (S.D. Cal. Aug. 10, 2011) (statement product would "sculpt" user's body was puffery); *Bobb Forest Prods., Inc. v. Morbark Indus., Inc.*, 783 N.E.2d 560, 575 (Ohio 2002) (concluding statement that machine was "running real good" was puffery).

1    pre-suit notice requirement.  This is because, simply put, the remote manufacturer is not the

2    purchaser's "seller."  *See* 4 Anderson U.C.C. §2-607:117 (3d ed.) ("A person not in privity with

3    the defendant ... is not barred for having failed to give notice to the defendant ... ").  It runs

4    contrary to modern consumer practice to require a retail buyer to provide pre-suit notice to a

5    manufacturer with whom he had no dealings.  *See Greenman v. Yuba Power Prods., Inc.*, 377

6    P.2d 897, 900 (Cal. 1963) ("[I]t will not occur to [a buyer] to give notice to one with whom he has

7    had no dealings."); *see also Firestone Tire & Rubber Co. v. Cannon*, 452 A.2d 192, 197 (Md. Ct.

8    App. 1982) ("[G]iven the complex marketing chains through which many consumer goods flow

9    nowadays ... it is not difficult to imagine the injustice that would be caused to consumers from

10   requiring notice to each person in the chain."), *aff'd*, 456 A.2d 930 (Md. 1983).

11   Accordingly, courts in Florida and Texas have adopted the view that a non-privity retail

12   purchaser may sue a manufacturer without first giving notice and an opportunity to cure.  *See*

13   *Fed. Ins. Co. v. Lazzara Yachts of N. Am., Inc.*, No. 8:09-cv-607-T-27MAP, 2010 WL 1223126,

14   at *5 (M.D. Fla. Mar. 25, 2010) ("The plain language of the statute therefore does not require

15   notice to a manufacturer ...."); *Vintage Homes, Inc. v. Coldiron*, 585 S.W.2d 886, 888-89 (Tex.

16   Civ. App. 1979) ("[T]he notice requirement ... applies only as between a buyer and his immediate

17   seller.").  At a minimum, therefore, Defendant's arguments to dismiss Plaintiffs' Florida and Texas

18   claims for lack of pre-suit notice should be rejected.[18]

19   Furthermore, under Ohio law, filing a complaint may serve as notice of the breach where

20   the suit is filed shortly after the harm occurred and the defendant had prior notice of its

21   wrongdoing.  *See Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 638 (Ohio

22   1989) ("[I]n a proper case the filing of a civil complaint could serve as notice of breach.");

23   *Lincoln Elec. Co. v. Technitrol, Inc.*, 718 F. Supp. 2d 876, 883 (N.D. Ohio 2010).  Here, Plaintiffs

24   filed their lawsuit immediately after a widely disseminated news report about the presence of

25   pentobarbital was released. MTD at 5.  The AC further alleges Defendant had prior knowledge of

26

27   _____
     [18] Plaintiffs withdraw their breach of express warranty claim under Alabama law.

28
     MEMORANDUM IN OPPOSITION
     TO MOTION TO DISMISS                                     LEAD CASE NO. 4:18-CV-00861-JSW

1    its breach because it had exclusive knowledge of the composition of its products and its products

2    were previously found to contain pentobarbital.  ¶¶120-121.  Accordingly, Plaintiffs are excused

3    from the pre-suit notice requirement under Ohio law.

####        4.        Plaintiffs Stated a Breach of Implied Warranty Claim

5            Defendant asserts myriad defects with Plaintiffs' claims for breach of implied warranties

6    under California (Count VII), Florida (Count XIII), Ohio (Count XVII), Tennessee (Count XIX),

7    West Virginia (Count XXIV), Texas (Count XXIX), Maryland (Count XXXV), and Washington

8    (Count XL) law.  However, these arguments should be rejected.

9            First, Defendant contends Plaintiffs failed to allege that the Contaminated Pet Foods are fit

10   for their ordinary purpose because the products are "unlikely to pose a health risk" and "provide[]

11   nutrition to pets."  MTD at 35.  This argument misses the point of Plaintiffs' AC, ignores

12   Plaintiffs' allegations, and seeks an inappropriate factual determination.  The implied warranty of

13   fitness for an ordinary purpose "provides for a minimum level of quality" in consumer products.

14   *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295-96 (1995).   A

15   manufacturer breaches the implied warranty if its product contains a "fundamental defect that

16   renders the product unfit for its ordinary purpose."  *Tietsworth v. Sears*, 720 F. Supp. 2d 1123,

17   1142 (N.D. Cal. 2010).   To determine a product's ordinary purpose, courts examine "the

18   consumer's reasonable expectations."  *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1107, 1110

19   (N.D. Cal. 2015) (applying California, Maryland, Texas, and Washington law and finding claim

20   for breach of implied warranty for mobile device that failed to transmit messages confidentially);

21   W. Va. Code § 46–2–315, cmt. 2 (describing concept of merchantability "go[es] to uses which are

22   customarily made of the goods in question").

23           A reasonable consumer expects his or her products to function both properly ***and*** safely.

24   *See In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 980 (N.D. Cal. 2014) ("[T]he

25   ordinary purpose of a car is not just to provide transportation but rather safe, reliable

26   transportation.");  *Otis Spunkmeyer, Inc. v. Blakely*, 30 S.W.3d 678, 687-89 (Tex. Ct. App. 2000)

27

28

27

("The ordinary purpose of cookie dough is to make an edible cookie; this purpose encompasses being eaten without injury from a concealed, hard object embedded in the cookie."); *Mexicali Rose v. Superior Court*, 822 P.2d 1292, 1303-04 (Cal. 1992) (explaining implied warranty for foodstuffs may be breached when prepared food contains foreign substances).

Here, the AC sufficiently alleges that the Contaminated Dog Foods are unfit for their ordinary purpose of providing ***safe, unadulterated*** nutrition to pets. The Contaminated Pet Foods contain pentobarbital, a drug used to euthanize animals. ¶¶9-10. According to the AC, pets ingesting pentobarbital may suffer adverse health effects, including death. ¶3. The AC alleges that the FDA declared "pentobarbital [in any amount] should not be in pet food." ¶21.[19] Moreover, the Contaminated Dog Foods had "no value or *de minimis* value" because they are adulterated with this substance. *See, e.g.*, ¶75. Defendant's assertion that the Contaminated Dog Foods "provide nutrition" is an unsupported and overly-reductive understanding of consumer expectations on a motion to dismiss. A reasonable consumer could conclude that a product designed to be consumed for pet nutrition, but which is adulterated with an animal euthanasia drug, is not nutritious. Therefore, Defendant's argument should be rejected.

Second, Defendant argues Plaintiffs' implied warranty claims based on product descriptions under Florida, Tennessee, Washington, West Virginia, Texas, and Maryland law "rise[] and fall[]" with their express warranty claims based on Defendant's advertising. MTD at 35-36. As explained above, Defendant's advertising on its website and its product packaging are verifiable assertions of fact and apply to all of Defendant's products. *See supra* Section IV.G.1. Accordingly, Defendant's arguments on this issue fails for the same reasons expressed above.

Third, Defendant contends Plaintiffs' California and Ohio implied warranty claims fail because "no court … has ever found a connection" between the respective state health and safety codes and an implied warranty. MTD at 36. While Defendant may be correct that no such case

---

[19] Although the FDA stated the levels of pentobarbital in the Contaminated Pet Foods "is unlikely to pose a health risk," consumers feed their pets the Contaminated Pet Foods "multiple times each day … leading to repeated exposure." ¶¶21, 62.

MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS

LEAD CASE NO. 4:18-CV-00861-JSW

1   exists, that argument is not a reason to dismiss Plaintiffs' claims.  The implied warranty of fitness

2   arises by operation of law.  *Am. Suzuki Motor Corp.*, 37 Cal. App. 4th at 1295-96.  The existence

3   and scope of an implied warranty is determined based on "the standard performance of like

4   products used in the trade."  *Pisano v. Am. Leasing*, 146 Cal. App. 3d 194, 198 (1983).  A

5   manufacturer's failure to conform its goods to a minimum ***legal*** standard is probative—if not

6   dispositive—of the minimum degree of fitness for a product sold to consumers within that

7   jurisdiction.  *Cf. Green v. Canidae Corp.*, No. CV 09-00486 GAF (PLAx), 2010 WL 11507372,

8   at *6 (C.D. Cal. Jan. 29, 2010) (denying motion to dismiss California UCL claim premised on

9   "borrowed" violation of Cal. Health & Safety Code §113075).

10          In California and Ohio, the legislatures set minimum standards for pet food by prohibiting

11  the manufacture and sale of pet food if it is "adulterated."  Cal. Health & Safety Code §113075

12  (prohibiting the manufacture or sale of adulterated pet food); Cal. Health & Safety Code §113090

13  (describing pet food as adulterated if it contains "any poisonous or deleterious substance");

14  *accord* Ohio Rev. Code Ann. §923.48(A). A pet food is adulterated if it contains a "poisonous or

15  deleterious substance that may render it injurious to health."  Cal. Health & Safety Code §113090;

16  *accord* Ohio Rev. Code Ann. §923.48(A).  If pet food is "adulterated," it is not saleable in those

17  states. The corollary point is that an "adulterated"—and thus unsaleable—pet food necessarily

18  falls below the minimum degree of fitness for sale in California and Ohio.

19          According to the AC, the Contaminated Dog Foods are "adulterated" and unsaleable in

20  California and Ohio and therefore breach the implied warranty of fitness.  Plaintiffs allege that the

21  Contaminated Dog Foods contain pentobarbital.  ¶9.  Pentobarbital is a drug used to euthanize

22  animals.  *Id.*  Pentobarbital can cause adverse health effects, including death.  ¶3.  In recognizing

23  the negative health consequences of this substance, the FDA claimed pentobarbital "should not be

24  in pet food."  ¶21.  Because the Contaminated Pet Foods contain pentobarbital, a substance which

25  can cause death if consumed, those products are adulterated.  *See, e.g.*, ¶¶3-5, 8, 20.  Because

26  these products are adulterated, they necessarily fall below the minimum standard of fitness for

27

28

1    their ordinary use in California and Ohio.  Accordingly, Plaintiffs adequately alleged a breach of

2    the implied warranty of fitness under California and Ohio law.

3          Fourth, Defendant argues that a lack of contractual privity bars Plaintiffs' California,

4    Florida, Ohio, and Washington implied warranty claims.  MTD at 36-37.  But all these states have

5    exceptions to the privity requirement that Defendant either ignores or fails to distinguish in a

6    meaningful way.   In California, Florida, Ohio, and Washington, privity is not required for an

7    implied warranty of fitness claim related to food products.  *Esborg v. Bailey Drug Co.*, 378 P.2d

8    298, 302-03 (Wash. 1963); *Burr v. Sherwin Williams Co.*, 268 P.2d 1041, 1048 (Cal. 1954); *Fla.*

9    *Coca-Cola Bottling Co. v. Jordan*, 62 So. 2d 910, 911 (Fla. 1953); *Ward Baking Co. v. Trizzino*,

10   161 N.E. 557, 559 (Ohio Ct. App. 1928).  This rule extends to food products given to household

11   pets, which are increasingly considered to "be a part of [the] family."   ¶80; *see also In re Milo's*

12   *Dog Treats Consol. Cases*, 9 F. Supp. 3d 523, 545-46 (W.D. Pa. 2014) ("[I]t would appear that

13   the jerky treats are properly considered foodstuffs for which no privity of contract is necessary to

14   proceed on a claim for breach of an implied warranty of merchantability …").

15          Furthermore, in California, Ohio, and Washington, an intended third-party beneficiary

16   may sue the manufacturer of a product without privity. *Roberts v. Electrolux Home Prods., Inc.*,

17   No. CV 12-1644, 2013 WL 7753579, at *9-10 (C.D. Cal. Mar. 4, 2013); *Bobb Forest Prods.*, 783

18   N.E.2d at 575-76; *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc.*, 831

19   P.2d 724, 730-31 (Wash. 1992).   Here, Plaintiffs allege that they are intended third-party

20   beneficiaries of Defendant's implied warranties.   ¶126.   Namely, Defendant marketed the

21   Contaminated Dog Foods to consumers and knew that consumers would be feeding its products to

22   their pets.  ¶¶62-63, 122-125; *see, e.g.*, *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 356

23   (E.D. Cal. 2008) (finding homeowners who purchased windows from retailer were third-party

24   beneficiaries of contract between manufacturer and retailer and therefore entitled to sue

25   manufacturer for breach of implied warranty despite lack of privity). That is all that is required to

26   survive a motion to dismiss.  *See, e.g.*, *Barakezyan v. BMW of N. Am., LLC*, No. CV 16-00173,

27   2016 WL 2840803, at *8-9 (C.D. Cal. Apr. 7, 2016) ("[W]here a plaintiff successfully plead third-

                                          30

28

1    party beneficiary status, a breach of implied warranty claim is not precluded."); *In re Toyota*

2    *Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liability Litig.*, 754 F.

3    Supp. 2d 1145, 1184 (C.D. Cal. 2010) ("[W]here plaintiffs successfully plead third-party

4    beneficiary status, they successfully plead a breach of implied warranty claim.").

5          Fifth, Defendant contends Plaintiffs' Ohio, Texas, and Maryland warranty claims fail for

6    lack of pre-suit notice of the breach.  MTD at 37.  The pre-suit notice requirement "springs from

7    the same source" for both express and implied warranty claims.  *U.S. Tire-Tech, Inc. v. Boeran,*

8    *B.V.*, 110 S.W.3d 194, 201 (Tex. Ct. App. 2003).  Under Texas law, a manufacturer is not the

9    "seller" to a non-privity consumer. Therefore, a non-privity consumer is not required to give the

10   manufacturer notice of a breach of implied warranty before filing suit.  *See supra* Section IV.G.3.;

11   *see also Vintage Homes*, 585 S.W.2d at 888-89 ("[T]he notice requirement ... applies only as

12   between a buyer and his immediate seller.").  Likewise, under Ohio law, pre-suit notice is not

13   required if the defendant is actually or constructively aware of its wrongdoing and the complaint

14   is filed shortly after the wrongdoing.  *See supra* Section IV.G.3.; *see also Chemtrol Adhesives*,

15   537 N.E.2d at 638 ("[I]n a proper case the filing of a civil complaint could serve as notice of

16   breach.").  Finally, under Maryland law, the notice requirement does not apply to third-party

17   beneficiaries.  *Nemphos ex rel. C.G.N. v. Nestle USA, Inc.*, No. GLR-12-2718, 2013 WL

18   4501308, at *9 (D. Md. Aug. 21, 2013) ("The Court of Appeals of Maryland has consistently held

19   that this [pre-suit notice] requirement only applies to the actual buyer and does not extend to

20   third-party beneficiaries."), *aff'd sub nom. Nemphos v. Nestle Waters N. Am. Inc.*, 775 F.3d 616

21   (4th Cir. 2015).[20]  As explained above, Plaintiffs sufficiently alleged third-party beneficiary

22   status.  *See supra* Section IV.G.4.  Therefore, Plaintiffs are not required to allege pre-suit notice to

23

24   [20] Defendant cites *Lloyd v. General Motors Corp.*, 575 F. Supp. 2d 714 (D. Md.) for the
     proposition that a plaintiff's lack of pre-suit notice to a retailer is an affirmative defense for a
25   manufacturer.  MTD at 38, n.29.  But the Court in *Lloyd* recognized that "[t]he Maryland
     courts have yet to determine whether a manufacturer ... may raise as an affirmative defense a
26   consumer's failure to notify his immediate seller of an alleged breach of warranty."  575 F.
     Supp. 2d at 722.  Thus, the holding and reasoning in *Lloyd* do not accurately reflect the law in
27   Maryland, as determined by Maryland courts.

28

31

maintain a breach of implied warranty claim against Defendant under Ohio, Maryland, or Texas law.

### 5.   Defendant's "Standing Offer" of a Refund Does Not Moot Plaintiffs' Claims and Does Not Adequately Compensate Plaintiffs for its Breach of Warranties

Finally, Defendant argues Plaintiffs' warranty claims must be dismissed as moot because Defendant provided a "standing offer" to refund the purchase price of the Contaminated Pet Foods.   MTD at 39.   As discussed above in Section IV.A., this is not the case.   Although Defendant accurately recites the law of breach of warranty damages, its conclusion—that Plaintiffs' claims fail because a refund *exists*—does not flow from its premise.   For one, an inquiry into the existence or adequacy of Defendant's refund program is inappropriate on a motion to dismiss.[21] Moreover, Defendant does not contend that any Plaintiff availed himself or herself of its refund program that would give rise to an affirmative defense.   Instead, the Court must consider the allegation that Plaintiffs suffered damages because "they paid money for the Contaminated Dog Foods that were not what Defendant represented …." *See, e.g.*, ¶191.  This is sufficient to state a claim for damages under the laws of the states represented in this dispute.

Defendant's citation provides no support for its argument.   In *Jensvold v. Town & Country Motors, Inc.*, the plaintiff purchased a used car that was constructed by fusing two vehicles together.   649 A.2d 1037, 1039 (Vt. 1994) (describing this process as "clipping").   The plaintiff discovered the car was "clipped" and tendered the vehicle back to the dealer he purchased it from; however, the dealer did not accept the plaintiff's tender.  *Id.* at 1039-40.  The Vermont Supreme Court held that the plaintiff could not recover damages for breach of the implied warranty of merchantability because the plaintiff revoked his acceptance and tendered the vehicle to the

---

[21] Defendant has offered nothing to support its assertion that a "standing offer" of a refund even exists. If it does, there are numerous questions that cannot be resolved on a motion to dismiss. For example, what does Defendant mean when it claims its program compensates consumers "fully?" How does Defendant's idea of "full" compensation compare to Plaintiffs' damages model? How will consumers be notified of the refund program? How does a consumer qualify for a refund? Are there limits on the number of refunds a consumer can claim? How long do consumers have to claim a refund?

1  dealer. *Id.* at 1042. The Court reasoned that although the plaintiff's remedy was acceptance

2  damages, the plaintiff properly revoked his acceptance, thus undermining his claim for damages.

3  *Id.*; *see also* 4A Part II Anderson U.C.C. §2-714:11 (3d ed.) ("A buyer cannot ... revoke

4  acceptance of the goods and obtain breach of warranty damages.").

5      The situation here is demonstrably different. In *Jensvold*, the Court applied Vermont law

6  (which has no bearing on this dispute) and reviewed the sufficiency of factual findings regarding

7  the plaintiff's acceptance of the vehicle (which is inappropriate on a motion to dismiss). 649 A.2d

8  at 1040-41. And unlike the plaintiff in *Jensvold*, Plaintiffs accepted Defendant's products and

9  cannot revoke their acceptance because the Contaminated Dog Foods have already been

10  consumed. Further, in *Jensvold*, the plaintiff's own conduct undermined his claim for warranty

11  damages because the remedies of revocation and damages were mutually exclusive. Here, by

12  contrast, Plaintiffs are not seeking mutually exclusive remedies. Instead, Defendant is using a

13  voluntary refund program of an unspecified duration with unspecified terms as a sword—rather

14  than a shield—to dismiss Plaintiffs' AC. In short, *Jensvold* does not favor dismissing Plaintiffs'

15  express and implied warranty claims. Accordingly, Defendant's "standing offer" of a refund does

16  not moot Plaintiffs' warranty claims.

17      **H.    Plaintiffs May Maintain Claims on Behalf of a Nationwide Class**

18      Defendant incorrectly asserts that Plaintiffs may not pursue a nationwide class under

19  California law against a California company.[22] As established below, California law may be

20  constitutionally applied to non-residents, and Defendant has failed to meet its burden to show that

21  California law should not be applied to non-residents under a choice of law analysis.

22      Application of California law to non-residents is constitutional so long as California has

23  "'significant contact or significant aggregation of contacts'" to the claims. *Washington Mut. Bank*

24

_____

25  [22] Defendant claims the nationwide claims are confusing and illogical yet at the same time
26  clearly understood the Classes as adequately defined in the AC. Moreover, there is nothing
   improper with the alleged claims as plaintiffs are allowed to seek certification of subclasses or
27  classes in the alternative at the pleading stage. *Donohue*, 871 F. Supp. 2d at 923.

28

*v. Superior Court*, 15 P.3d 1071, 1080-81 (Cal. 2001) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985)); *Hurtado v. Superior Court*, 522 P.2d 666, 670 (Cal. 1974); *see also Mazza*, 666 F.3d at 589.   When a defendant, like Big Heart, is headquartered in California, has its operations in California, prepares and approves of the misleading advertising at issue in California, and disseminates the misleading advertising from California (¶112), application of California law to a nationwide class is appropriate.   *See Bruno v. Quten Research Inst. LLC*, 280 F.R.D. 524, 538-39 (C.D. Cal. 2011) (applying California law to nationwide class where defendant's headquarters were in California and 30% of sales occurred in California); *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 339-42 (N.D. Cal. 2010) (applying California to nationwide class where 19% of class sales were in California); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 589 (C.D. Cal. 2008) (certifying nationwide California-law class where defendant had California operations and a significant number of class members resided in California); *Johnson v. Triple Leaf Tea Inc.*, No. C-14-1570 MMC, 2014 WL 4744558, at *7 (N.D. Cal. Sept. 23, 2014) (allegations that Defendant is a California corporation with its principal place of in California is sufficient at pleading stage); *Tilahun v. Sunshine Makers Inc.*, No. SACV 10-427 AG (ANX), 2010 WL 11468629, at *4 (C.D. Cal. Sept. 27, 2010).   Even *Mazza* found that "California ha[d] a constitutionally sufficient aggregation of contacts to the claims of each putative class member ... because Honda's corporate headquarters, the advertising agency that produced the allegedly fraudulent misrepresentations, and one fifth of the proposed class members [were] located in California."   *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012).   As such, it is not surprising that Defendant provides no argument that application of California law would be unconstitutional here based on these allegations.[23]

---

[23] The cases relied on by Defendant fail to address California law applying to non-residents when the Defendant is headquartered in California and the relevant statements are approved and/or disseminated from California.   *Carrier IQ*, 78 F. Supp. 3d 1051 (no allegations or analysis as to whether California law is applicable to non-residents based on the headquarter and operations of Defendants); *Mollicone v. Universal Handicraft, Inc.*, No. 2:16-CV-07322-CAS (MRWX), 2017 WL 440257, at *9-10 (C.D. Cal. Jan. 30, 2017) (same).

34

As the above establishes the constitutionality of applying California law to non-residents, the burden shifts to Defendant to demonstrate "that foreign law, rather than California law, should apply to class claims."  *Mazza*, 666 F.3d at 590.  And contrary to Defendant's assertion, "*Mazza did not* ... create a 'general rule that 'where an out-of-state plaintiff claims to have been deceived or harmed as a result of misrepresentations or omissions received outside of California, that plaintiff's consumer protection claims must be brought under that plaintiff's own state laws.'" *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1316 (C.D. Cal. 2013).  Unlike the defendant in *Mazza* (which actually presented the issue as part of class certification briefing), Defendant does not present sufficient legal and factual choice of law argument that other states' consumer protection statute and common law preclude applying California law to a nationwide class at this time. Instead, Defendant merely attached hundreds of pages of exhibits citing cases that *are not included* in the Motion, and none of these charts (which Defendant admits were not even updated to reflect current law in the states) include any factual analysis as to how differences in state law preclude a nationwide class.

Defendant makes broad sweeping conclusions as to why *Mazza* should preclude application of California law here with a generic citation to these exhibits. This is an improper attempt to go beyond the Court's page limitations, and this Court should not consider the exhibits in deciding the Motion.  *See* Civil L.R. 7-3(a); *see also, e.g.*, *King Tuna, Inc. v. Anova Food, Inc.*, No. CV-077451-ODW (JWJX), 2009 WL 10673202, at *1 n.2 (C.D. Cal. Jan. 28, 2009); *De La Torre v. Legal Recovery Law Office*, No. 12 cv 2579-LAB (WMC), 2013 WL 5462294, at *3 (S.D. Cal. Sept. 30, 2013) ("Citations to exhibits must explain the significance of the cited evidence, and the parties cannot circumvent page limits by simply incorporating by reference other documents, such as attached or lodged exhibits." (citing *Pagtakhan v. Doe*, No. C 08-2188 SI, 2013 WL 3052856, at *5 (N.D. Cal., June 17, 2013)). Indeed, Defendant devotes just three paragraphs summarizing general standards and citing authority only recognizing the general standards.  There is no detailed and specific choice of law analysis or argument attempting to meet Defendant's burden at this time.  Specifically, Defendant fails to identify the material

35

1    differences between the laws for each claim alleged in the AC and offers no analysis why "under

2    the circumstances" here (where a California company is selling adulterated dog food in direct

3    violation of its consumer and pet food laws) "*each jurisdiction's interest*" in applying its law

4    creates a conflict.  MTD at 41-43.[24]

5        This Court has rejected similar tactics at the motion to dismiss stage and should do so

6    again here.  *In re Google Android Consumer Privacy Litig.*, No. 11-MD- 02264 JSW, 2014 WL

7    988889, at *8 (N.D. Cal. Mar. 10, 2014); *see also Clancy v. The Bromley Tea Co.*, 308 F.R.D.

8    564, 572-73 (N.D. Cal. 2013) ("Such a detailed choice-of-law analysis is not appropriate at [the

9    motion for judgment on the pleadings] stage of the litigation.  Rather, such a fact-heavy inquiry

10   should occur during the class certification stage, after discovery."); *In re Clorox Consumer Litig.*,

11   894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012) ("Significantly, *Mazza* was decided on a motion for

12   class certification, not a motion to strike. At [the motion to dismiss] stage of the instant litigation,

13   a detailed choice-of-law analysis would be inappropriate.").

14       Finally, underscoring the impropriety of foreclosing a nationwide class under *Mazza* here

15   (let alone doing so at the pleading stage) in *Bruno v. Eckhart Corp.*, 280 F.R.D. 540 (C.D. Cal.

16   2012), the Central District denied a motion to reconsider certification of a nationwide class,

17   finding that *Mazza* did not change the law in California, and recognized that once Plaintiffs show

18   California has sufficient interest, it is defendant's burden to prove other state laws are in conflict.

19   *Id.* at 547 ("District courts routinely apply the California consumer protection laws at issue in

20   *Mazza* and in the present case--California Consumers Legal Remedies Act (CLRA) and Unfair

21   Competition Law (UCL)--to nationwide classes.").

22

23

24

---

25   [24] Defendant's argument that the labels vary is improper as it is construing the pleadings
     against Plaintiffs at this time but skewing the allegations that clearly state the Dog Foods were
26   all marketed as "100% complete and balance nutrition."  Indeed, Defendant does not maintain
     only certain products have that decal as a matter of fact, but instead simply relies on the
27   exemplary labels in the AC.

28
                                                    36

1

### I.        Plaintiffs Have Standing to Seek Injunctive Relief

2           Plaintiffs pleaded sufficient facts establishing standing to seek injunctive relief.   A

3    plaintiff can establish standing for injunctive relief by alleging he has suffered or is threatened

4    with a concrete and particularized legal harm and that there is a sufficient likelihood that he will

5    again be wronged in a similar way.   *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir.

6    2007).   Here, Plaintiffs suffered concrete and particularized harm by purchasing dog food they

7    would not have had they known it was adulterated.   ¶¶71-111.   Plaintiffs also face a sufficient

8    likelihood of being similarly wronged again without court intervention because Plaintiffs desire to

9    purchase the products in the future.   ¶¶163, 229.

10          Defendant's contention that its remedial measures have rendered any claim for injunctive

11   relief moot (MTD at 44) is false and contrary to well-established law.   Tellingly, Defendant cites

12   no law to support its argument.   MTD at 44.   However, the Supreme Court has explained that

13   "[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be

14   expected to recur lies with the party asserting mootness."   *Friends of the Earth, Inc. v. Laidlaw*

15   *Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000).   This standard is stringent, and a case

16   "might" become moot "if subsequent events made it ***absolutely clear*** that the allegedly wrongful

17   behavior could not reasonably be expected to occur."   *Id.*   The Ninth Circuit and this Court have

18   echoed the same sentiment.   *See Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1130 n.3 (9th

19   Cir. 2005) ("Indeed, defendants who argue that a case has been mooted by their voluntary

20   cessation of allegedly wrongful conduct must meet a very high burden because a mootness-based

21   dismissal would 'leave the defendant…free to return to his old ways.'");   *Reese v. Odwalla*, No.

22   13-cv-00947-YGR, 2017 WL 565095, at *6 (N.D. Cal. Feb. 13, 2017) (finding defendants failed

23   to meet their heavy burden to demonstrate wrongdoing would not be repeated, where defendants

24   argued they ceased labeling their products with the disputed term);   *Astiana v. Ben & Jerry's*

25   *Homemade, Inc.*, No. C 10–4387 PJH, 2011 WL 2111796, at *12-13 (N.D. Cal. May 26, 2011)

26   (same).

27

28

MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS                                                    LEAD CASE NO. 4:18-CV-00861-JSW

1    Defendants have failed their heavy burden to show that it is "**absolutely clear**" that the

2    wrongful behavior "could not reasonably be expected to occur."   Without court intervention,

3    nothing is stopping Defendant from continuing to manufacture and sell adulterated dog food

4    without disclosing the presence of pentobarbital.  For instance, Defendant may choose to continue

5    utilizing the same substandard quality controls that led to its products being adulterated with

6    pentobarbital in the first place.  Defendant essentially proposes taking it at its word, and nothing

7    more, that it has ceased the wrongful conduct, it does not intend to resume the wrongful conduct,

8    and that it has recalled all adulterated dog food.   Similarly, Defendant's assertion that it has

9    engaged in a corrective "marketing campaign" (MTD at 44) is self-serving.   Defendant's

10   "marketing campaign" solely amounts to press releases contained on the Gravy Train website.

11   ¶¶22, 25-26.   Defendant's bare minimum effort is a far cry from the corrective marketing

12   campaign sought by Plaintiffs.  The Court should deny Defendant's motion to dismiss Plaintiffs'

13   claim for injunctive relief.

14        **J.    Plaintiffs Properly Allege Punitive Damages**

15        Plaintiffs satisfy their low burden to plead entitlement to punitive damages at this stage.

16   Rule 8(a) requires only that the AC include "a short and plain statement of the claim showing that

17   the pleader is entitled to relief, and … a demand for the relief sought …."  Fed. R. Civ. P. 8(a).

18   Rule 9(b) further provides that "[m]alice, intent, knowledge, and other conditions of mind of a

19   person may be averred generally."  Fed. R. Civ. P. 9(b).  Accordingly, "in federal court, a plaintiff

20   may include a 'short and plain' prayer for punitive damages that relies entirely on unsupported and

21   conclusory averments of malice or fraudulent intent."  *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266,

22   273 (N.D. Cal. 2015) (citing *Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016, 1019 (S.D. Cal.

23   2000)); *see also In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1545 (9th Cir. 1994) (finding that

24   plaintiffs need not plead "any particularity in connection with an averment of intent, knowledge or

25   condition of the mind").

26

27

28

MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS                                        LEAD CASE NO. 4:18-CV-00861-JSW

In this action, Plaintiffs have properly alleged fraud, malice, oppression, and knowledge/intent[25] throughout the AC, and have included a short and plain prayer for punitive damages.  AC, Prayer for Relief, ¶I.  These allegations and the prayer for relief more than satisfy the pleading requirements under the law.  Conversely, Defendant misstates the standard for alleging punitive damages at the pleadings stage (MTD at 45), and supports its position by relying on *Graham v. Wal-Mart Stores, Inc.*, No. 2:14-cv-02916-MCE-CMK, 2017 WL 3783101, at *4 (E.D. Cal. Aug. 31, 2017).  However, *Graham* concerns a corporate defendant's "effort to foreclose the possibility of punitive damages against it through *summary adjudication*," *id.* at *5, and, here, the applicable standard is far lower at the pleading stage.[26]

Defendant also makes the unnecessary and unprovoked assertion that New York, Florida, Maryland, and West Virginia do not authorize the recovery of punitive damages under their consumer protection statutes, nor for breach of warranty.  MTD at 45.  Foremost, the prayer for relief in the AC specifies that they are seeking "[a]n order requiring Defendant to pay punitive damages **on any count so allowable**."  AC, Prayer for Relief, ¶I.  Further, the AC goes to great lengths to detail the relief sought under each count, and most of the counts Defendant takes issue with do not list punitive damages.  *See* ¶¶239, 240, 252, 261-262, 360, 370, 394, 431, 467, 479.[27]

---

[25] *See*, i.e., ¶¶10, 44, 114, 155(c), 206, 312, 400, 503, 605.

[26] Similarly, Defendant incorrectly argues Plaintiffs are barred from recovering punitive damages based on California law for non-resident plaintiffs because "awarding punitive damages for conduct committed **outside** a jurisdiction **may** violate due process."  MTD at 45 (quoting *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 551 (C.D. Cal. 2012)).  Plaintiffs' claims based on California law concern representations and omissions emanating from California (¶¶ 69, 112), and are therefore proper.  *Kearney v. Hyundai Motor Co.*, No. SACV 09-1298 DOC, 2010 WL 9093204, at *8 (C.D. Cal. June 4, 2010) (finding application of the UCL and CLRA to non-resident plaintiffs was proper where wrongful conduct was alleged to have emanated from California.)  Regardless, whether awarding punitive damages for conduct committed outside a jurisdiction "may" violate due process is not conclusively established, and inappropriate for decision at the pleading stage.

[27] Plaintiffs properly seek punitive damages pursuant to sections 349 and 350 of New York General Business Law.  *See* N.Y. Gen. Bus. Law §349(h); N.Y. Gen. Bus. Law § 350-e(3); *see also Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735 (NSR), 2018 WL 1614349, at *9 (S.D.N.Y. Mar. 30, 2018).

1  For these reasons, Defendant's motion to dismiss Plaintiffs' punitive damages claims should be

2  denied.

3  **V.     CONCLUSION**

4        For the reasons stated above, Plaintiffs respectfully request that the Court deny

5  Defendants' Motion in its entirety.  Alternatively, if the Court is inclined to grant any portion of

6  Defendants' Motion, Plaintiffs should be granted leave to amend the Amended Complaint to cure

7  any perceived deficiencies.

8   Dated:  October 12, 2018

9                                                   LOCKRIDGE GRINDAL NAUEN P.L.L.P.
                                                    ROBERT K. SHELQUIST
10                                                  REBECCA A. PETERSON (241858)

11                                                          */s/ Rebecca Peterson*
                                                    REBECCA A. PETERSON
12

13                                                  100 Washington Avenue South, Suite 2200
                                                    Minneapolis, MN 55401
14                                                  Telephone: (612) 339-6900
                                                    Facsimile: (612) 339-0981
15                                                  E-mail: rkshelquist@locklaw.com
                                                            rapeterson@locklaw.com
16

17                                                  Lead Counsel for Plaintiffs

18                                                  ROBBINS ARROYO LLP
                                                    KEVIN A. SEELY (199982)
19                                                  STEVEN M. MCKANY (271405)
                                                    600 B Street, Suite 1900
20                                                  San Diego, CA 92101
                                                    Telephone: (619) 525-3990
21                                                  Facsimile: (619) 525-3991
                                                    E-mail: kseely@robbinsarroyo.com
22                                                          smckany@robbinsarroyo.com

23                                                  GUSTAFSON GLUEK, PLLC
                                                    DANIEL E. GUSTAFSON
24                                                  KARLA M. GLUEK
                                                    RAINA C. BORRELLI
25                                                  Canadian Pacific Plaza
                                                    120 South 6th Street, Suite 2600
26                                                  Minneapolis, MN 55402
                                                    Telephone: (612) 333-8844
27                                                  Facsimile: (612) 339-6622

                                                    40
28

1

E-mail: dgustafson@gustafsongluek.com
          kgluek@gustafsongluek.com
          rborrelli@gustafsongluek.com

2

3   CUNEO GILBERT & LADUCA, LLP
    CHARLES LADUCA
4   KATHERINE VAN DYCK
    4725 Wisconsin Ave NW, Suite 200
5   Washington, DC 20016
    Telephone: 202-789-3960
6   Facsimile: 202-789-1813
    E-mail: kvandyck@cuneolaw.com
7             charles@cuneolaw.com

8   LITE DEPALMA GREENBERG, LLC
    JOSEPH DEPALMA
9   SUSANA CRUZ HODGE
    570 Broad Street, Suite 1201
10  Newark, NJ 07102
    Telephone:  (973) 623-3000
11  E-mail:   jdepalma@litedepalma.com
              scruzhodge@litedepalma.com

12  Plaintiffs' Executive Committee

13  NAPOLI SHKOLNIK PLLC
    PAUL B. MASLO
14  SALVATORE C. BADALA
    360 Lexington Avenue
15  New York, NY 10017
    Telephone:  (212) 397-1000
16  E-mail:   pmaslo@napolilaw.com
              sbadala@napolilaw.com

17

18  ANDREWS & THORNTON
    Anne Andrews
19  4701 Von Karman Avenue, Suite 300
    Newport Beach, CA 92660
20  Telephone:  (949) 748-1000
    E-mail:  aa@andrewsthornton.com

21  Counsel for Plaintiff Schirripa

22

23

24

25

26

27

28

41